FRANK J. KANE, PLAINTIFF IN ERROR, v. THE STATE, HENRY TITUS, PROSECUTOR, DEFENDANT IN ERROR.

*Argued March 7, 1911—Decided June 22, 1911.*

A law which imposes a license fee upon the owners of all automobiles using the improved public highways of the state, the amount of such fees being determined by the horse power of the vehicle, although it incidentally affects interstate commerce, is not a regulation of such commerce within the meaning of the commerce clause of the federal constitution.

On error to the Supreme Court.

For the plaintiff in error, *John W. Griggs (John W. Harding* and *Charles T. Terry,* of the New York bar, on the brief).

For the state, *Edmund Wilson,* attorney-general, and *Nelson B. Gaskill,* assistant attorney-general.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in error, a resident of the State of New York, while driving his automobile along the highways of this state, on his way from his place of residence to a town in the State of Pennsylvania, was arrested for violating the fifteenth and sixteenth sections of the Automobile law of 1908 (*Pamph. L., p.* 615), by not having registered his machine, or paid the fee required for doing so; and by not having filed with the secretary of state a duly-executed instrument constituting that official his attorney upon whom all original process in any action or legal proceeding brought against him, and arising out of the operation of his automobile within the state might be served. His prosecution for this offence followed his arrest and resulted in a conviction. Upon a review of that conviction by the Supreme Court there was an affirmance, the court considering that the case was governed by its deliverance in *Cleary* v. *Johnston,* 50 *Vroom* 49. The plaintiff in error, by the present writ, at-

tacks the legality of the original conviction and of its affirmance.

The first contention made in his behalf is that the Automobile law of 1908 is invalid, because the license fees exacted by it are not limited to the cost of registration and inspection, and the act is therefore intended as a revenue measure. In *Cleary* v. *Johnston, supra,* the proofs submitted were not considered by the court to be demonstrative that the statute was a revenue measure; the court, however, pointed out that if such was conceded to be its object, the law was, nevertheless, not invalid on that account, for the reason that the imposition of license fees for revenue purposes was clearly within the sovereign power of the state. We agree with counsel of the plaintiff in error that the proofs taken in the present case satisfactorily show that the present Automobile law is a revenue measure, but hold, in accordance with the view expressed by the Supreme Court and above adverted to, that, in passing it, the legislature was fully within the powers conferred upon it by the constitution. The former decisions of our courts upon this subject are fully cited in the opinion in the Cleary case, and a recitation of them by us is unnecessary.

It is further contended by the plaintiff in error that, conceding the power of the legislature to impose license fees upon its own citizens for the purpose of raising revenue, the statute under consideration, because it imposes such fees upon non-residents passing through the state, and engaged in interstate commerce, violates the commerce provision of the federal constitution, and is, therefore, to that extent, void; that plaintiff in error was so engaged at the time of his arrest, and that for this reason his conviction should be set aside.

We are willing to assume, in the discussion of this point, that the claim of the plaintiff in error that at the time of his arrest he was engaged in interstate commerce is justified by the fact. This being so, the important question remains whether the act of 1908 is to any extent a regulation of commerce between the states, within the meaning of the commerce clause of the federal constitution. That it affects inter-

state commerce is true. But state laws may do this without being obnoxious to the constitutional provision appealed to. For example, a state may erect, or authorize the erection of, wharves along the banks of its navigable rivers which are used for commerce between the states, and charge, or authorize to be charged, wharfage fees for the privilege of receiving and landing thereon passengers and freight which come from other states, without infringing upon that provision. The imposition of such charges, although affecting interstate commerce, is, nevertheless, a legitimate exercise of state power. *Transportation Company* v. *Parkersburg,* 107 *U. S.* 691. So, too, a state may construct locks in such rivers in order to improve the navigation thereof, and legally charge reasonable tolls to persons using such locks while engaged in interstate commerce. *Huse* v. *Glover,* 119 *Id.* 543. It may construct, or authorize to be constructed, in such waters, booms for the purpose of increasing the facility with which the business of floating and gathering logs may be conducted thereon, and lawfully charge, or authorize to be charged, reasonable sums for the use of such booms in the floating of logs from a point within the state to a point outside thereof, or *vice versa. Lindsay & Phelps Co.* v. *Mullen,* 176 *Id.* 126. A state may do these things because, having expended moneys, either itself, or by the agencies created by it, in increasing the facility with which commerce, either interstate or intrastate, may be carried on, it is entitled to charge a fair remuneration for the outlay made by it, and for the maintenance of the public work which it has constructed.

A very ordinary example of the exercise of this power is the construction of public roads known as "turnpikes" by agencies created by the state, for the use of which tolls are permitted to be charged to persons using the same. Such public roads are open to the use of every person desiring to travel upon them upon payment of the tolls authorized to be charged, but it has never been suggested, so far as we are aware (and certainly any such suggestion would be without merit), that a team and wagon bringing merchandise from

another state is entitled to the use of these improved highways without the payment of the required toll because engaged in interstate commerce.

Although, ordinarily, turnpikes are built and owned by corporations created by the state for the purpose of constructing and maintaining them, what the state may do indirectly through such agencies it may do directly—that is, it may itself lay out and construct such improved public roads, and charge reasonable tolls to all persons using the same, without regard to the character of the business for which they are being used. And this is practically what New Jersey is now doing. It has spent millions of dollars in improving the roads of the state, and is yearly expending hundreds of thousands more in their extension and maintenance. It has found that the use of these roads by heavy and swiftly-moving automobiles results in their rapid deterioration, and increases largely the annual expense of maintaining them in proper condition. It considers, and rightly, we think, that a user of its roads which is so abnormally destructive, should no longer be free, and, by the law of 1908, it imposes upon all of these vehicles which are driven over its roads a charge for such user for the purpose of raising revenue to be applied to their upkeep. Instead of charging a mileage fee, or toll, to be regulated by the distance traveled, it has seen fit to require the payment of a lump sum by the owners of such machines, for the privilege of using its roads, the charge being regulated by the horse power shown, viz.. automobiles of ten horse power or less are charged $3, those between ten and thirty horse power $5, and those of more than thirty horse power $10. The payment of these fees is required alike by residents and non-residents, for machines used for pleasure or for commerce. No discrimination whatever is made by the statute in favor of any person or any automobile. It is absolutely impartial in its operation. By paying the fee required the owner of an automobile, whether a resident or non-resident, is entitled to use the same upon the roads of the state to the fullest extent he may desire.

The charging of an annual sum for the use of its highways by automobiles, instead of a mileage fee, is clearly a matter within the discretion of the state. No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privilege it bestows. *Home Insurance Co.* v. *New York,* 134 *U. S.* 594. The only limit upon its power is that the amount charged shall not be unreasonable; and there is no suggestion that such a condition is created by the present law.

We conclude, therefore, that the contention of the plaintiff in error, that the act of 1908 contravenes the federal constitution, is without substance.

It is further contended, on behalf of the plaintiff in error, that the imposition provided by the act of 1908 is a property tax, and invalid because it is imposed without regard to the value of the property upon which it is laid. What we have already said disposes of this contention. The character of the imposition is not determined by the mode adopted in fixing its amount. *Maine* v. *Grand Trunk Railway Co.,* 142 *U. S.* 217. The imposition is a license or privilege tax charged in the nature of compensation for the damage done to the roads of the state by the driving of these machines over them, and is properly based, not upon the value of the machine, but upon the amount of destruction caused by it.

The other errors assigned and argued are fully discussed by the Supreme Court in its opinion in Cleary v. Johnston, and we are entirely content with the disposition there made of them.

The judgment under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, MINTURN, BOGERT, VREDENBURGH, CONGDON, SULLIVAN, JJ.   11.

*For reversal*—None.