(February 10, 1915.)

In the Matter of the Application of HARRY S. KESSLER for a Writ of Habeas Corpus.

[146 Pac. 113.]

MOTOR VEHICLES — CONSTITUTIONAL LAW — REVENUE AND TAXATION — LICENSE OR REGISTRATION FEE.

1.   Chapter 179, Sess. Laws 1913, p. 558, is a law intended, among other things, to require those who operate motor vehicles upon the public highways to cause such vehicles to be registered and to pay therefor a license, or registration fee, which is in excess of the amount necessary to be raised for the purpose of policing such vehicles upon the public highways.

2.   In matters of taxation the legislature possesses plenary power, except as such power may be limited or restricted by the constitution. It is not necessary that the constitution contain a grant of power to the legislature to deal with the question of taxation.

3.   The provisions of the constitution requiring all taxes to be uniform and to be levied and collected under general laws which shall prescribe such regulations as shall insure a just valuation of all property, refer to taxation according to the commonly accepted meaning of that term, and do not apply to license or registration fees.

4.   The constitution of Idaho does not prohibit the state from raising revenue in the manner provided for in said chapter 179.

APPEAL from the District Court of the Third Judicial District for the County of Ada.   Hon. Carl A. Davis, Judge.

Petition for writ of *habeas corpus*. Petition granted. *Reversed*.

J. H. Peterson, Attorney General, E. G. Davis, T. C. Coffin, Assistants, Raymond L. Givens, Prosecuting Attorney, E. P. Barnes, Jay M. Parrish, for Appellant.

In the case of *Achenbach v. Kincaid*, 25 Ida. 768, 140 Pac. 529, this court has held that every intendment shall be in favor of the constitutionality of the act in question.

The right of the state to pass a law authorizing a license tax under police power for the purpose of revenue has been expressly recognized in the following cases: *Nebraska Telephone Co. v. City of Lincoln*, 82 Neb. 59, 117 N. W. 284; *Salt Lake City v. Christenson Co.*, 34 Utah, 38, 95 Pac. 523, 17 L. R. A., N. S., 898; *City of Buffalo v. Lewis*, 192 N. Y. 193, 84 N. E. 809; *Adler v. Whitlock*, 44 Ohio St. 539, 9 N. E. 672; *Commonwealth v. Boyd*, 188 Mass. 79, 108 Am. St. 464, 74 N. E. 255; *City of Terre Haute v. Kersey*, 159 Ind. 300, 95 Am. St. 296, 64 N. E. 469; Elliott on Roads and Streets, p. 1114.

The use of the roads is a right which by and of itself may be taxed and which does not violate any of the principles of our constitution either as to exempting the automobile from valuation taxes or on the ground that it operates under police power. (*Kaiser Land and Fruit Co. v. Curry*, 155 Cal. 638, 103 Pac. 341; *People v. Grant*, 157 Mich. 24, 133 Am. St. 329, 121 N. W. 300; *Dudley v. Northampton Street Ry. Co.*, 202 Mass. 443, 89 N. E. 25, 23 L. R. A., N. S., 561; *Ex parte Miller*, 13 Cal. App. 564, 110 Pac. 139; *Kellaher v. City of Portland*, 57 Or. 575, 110 Pac. 492, 112 Pac. 1076; *Wiggins Ferry Co. v. East St. Louis*, 102 Ill. 560.)

It is not necessary to determine whether the license fee is for revenue or for purposes of regulation. (*Banta v. City of Chicago*, 172 Ill. 204, 50 N. E. 233, 40 L. R. A. 611; *Price v. People*, 193 Ill. 114, 86 Am. St. 306, 61 N. E. 844, 55 L. R. A. 588; *Bassett v. People*, 193 Ill. 334, 62 N. E. 215, 56 L. R. A. 558; *Raymond v. Hartford Fire Ins. Co.*, 196 Ill. 329, 63

N. E. 745; *Northern Pac. Ry. Co. v. Gifford,* 25 Ida. 196, 136 Pac. 1131; *Kane v. State,* 81 N. J. L. 594, Ann. Cas. 1912D, 237, 80 Atl. 453; *Cleary v. Johnston,* 79 N. J. L. 49, 74 Atl. 538; *Dewitt v. State,* 155 Wis. 249, 144 N. W. 253; *State v. Sheppard,* 79 Wash. 328, 140 Pac. 332.)

Harry S. Kessler, Respondent, *pro se.*

"The power to impose such a tax (license) extends only to the business as contradistinguished from the ownership or possession or right of ownership of the property." (*In re Gale,* 14 Ida. 761, 95 Pac. 679.)

The primary and paramount, if not the only, object of the law, is to obtain revenue. (*Rosenbloom v. State,* 64 Neb. 343, 89 N. W. 1055, 57 L. R. A. 922.)

If the money is to be used particularly for some public improvement it indicates that the exaction is a tax. (*Ellis v. Frazier,* 38 Or. 462, 63 Pac. 642, 53 L. R. A. 454; *Harder's Fireproof Storage & Van Co. v. Chicago,* 235 Ill. 58, 85 N. E. 245, 14 Ann. Cas. 434.)

A fee for a license must be such a fee only as will legitimately assist in the regulation; and it should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers. (Cooley on Taxation, 2d ed., 597.; *State v. Moore,* 113 N. C. 697, 18 S. E. 342, 22 L. R. A. 472; *City of Jacksonville v. Ledwith,* 26 Fla. 163, 23 Am. St. 558, 7 So. 885, 9 L. R. A. 69; *City of Jackson v. Newman,* 59 Miss. 385, 42 Am. Rep. 367; *Sipe v. Murphy,* 49 Ohio St. 536, 31 N. E. 884, 17 L. R. A. 184; *Chaddock v. Day,* 75 Mich. 527, 13 Am. St. 468, 42 N. W. 977, 4 L. R. A. 809; *Waters-Pierce Oil Co. v. City of Hot Springs,* 85 Ark. 509, 109 S. W. 293, 16 L. R. A., N. S., 1035.)

An examination of the authorities reveals that an annual fee of three dollars is the maximum that has ever been approved as a legitimate charge for police regulation for automobiles. (*Ayers v. Chicago,* 239 Ill. 237, 87 N. E. 1073; *Cleary v. Johnston,* 79 N. J. L. 49, 74 Atl. 538; *State v. Lawrence* (Miss.), 61 So. 975; *In re Hoffert* (S. D.), 148 N. W.

20, 52 L. R. A., N. S., 949; *Graves v. Janes,* 18 Ohio C. C. (N. S.) 448.)

The registration fees are charged against each motor vehicle, and exempting them from any other taxation shows that the legislature intended to tax them as articles of personal property. (*Vernor v. Secretary of State,* 179 Mich. 157, 146 N. W. 338.)

This method of registration fees just as clearly violates the rule of uniformity as the requirement of valuation. As between the owners of motor vehicles the law is both unfair and unjust. (*High School v. Lancaster Co.,* 60 Neb. 147, 83 Am. St. 525, 82 N. W. 380, 49 L. R. A. 343; *State v. Poynter,* 59 Neb. 417, 81 N. W. 431; *Attorney General v. Winnebago Lake & R. Plank Road Co.,* 11 Wis. 35; *In re Opinion of the Justices,* 195 Mass. 607, 84 N. E. 499; *McCurdy v. Prugh,* 59 Ohio St. 465, 55 N. E. 154; *State v. Case,* 39 Wash. 177, 81 Pac. 554, 1 L. R. A., N. S., 152; *Hawkeye Ins. Co. v. French,* 109 Iowa, 585, 80 N. W. 660.)

MORGAN, J.—This is an appeal from an order of the district court discharging from custody the respondent who had been arrested for and convicted of operating and driving a motorcycle upon the public highways of Ada county, Idaho, in violation of the provisions of chapter 179 of the Session Laws of 1913, in that he had not caused the said motorcycle to be registered nor paid the fee incident thereto.

Said chapter creates a State Highway Commission and provides, among other things, a comprehensive plan of state highway construction and improvement and of policing motor traffic upon the public highways. Sec. 12 thereof is as follows: "Except as hereinafter provided, no motor vehicle shall be operated or driven upon any state or other public highway or upon the public streets of any city or incorporated village in this state until the said motor vehicle shall have been registered with the Secretary of the State Highway Commission." Said chapter provides the manner in which registration shall be applied for and the manner in which a record thereof shall be kept; that the application for registration of a motor vehicle

of 30 horse-power or less shall be accompanied by a fee of $15, and of a motor vehicle of over 30 horse-power and up to and including 40 horse-power, by a fee of $20, and of a motor vehicle of over 40 horse-power and up to and including 50 horse-power, by a fee of $25, and a motor vehicle of over 50 horse-power, by a fee of $40, and in case of a motorcycle, by a fee of $5. Said chapter also provides for the issuance to the applicant a certificate of registration and a number.

The fees above mentioned are to be paid annually and shall be in lieu of all taxes, general or local, and the chapter expressly provides that all motor vehicles for which this annual fee is to be paid and which have been so registered shall be exempt from taxation. It is also provided that the violation of any of the provisions of this chapter in question shall be a misdemeanor, punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding $300.00, or by both such fine and imprisonment. Under the terms of the chapter all such fines are to be turned over to the Secretary of the State Highway Commission who shall pay them over to the State Treasurer, together with all fees collected under the provisions of said chapter, and said moneys shall go into the state highway fund.

This chapter was before the court for consideration in the case of *Achenbach v. Kincaid et al.,* 25 Ida. 768, 140 Pac. 529, wherein the constitutionality of the law was questioned and it was held to not violate the constitution in the particulars therein considered, but the court held the questions here presented were not properly before it in that case.

In this case the respondent contends that the registration fee on motor vehicles provided for in section 16 of said chapter 179 is an attempted taxation other than by valuation and violates sec. 2, art. 7 of the constitution of Idaho, which is as follows: "The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her, or its property, except as in this article hereinafter otherwise provided. The legislature may also impose a license tax (both upon natural persons and upon

corporations, other than municipal, doing business in this state) ; also a per capita tax. *Provided,* the legislature may exempt a limited amount of improvements upon land, from taxation.''

It is contended that the said chapter, in so far as it provides for the payment of fees for registration, in an amount in excess of that necessary to properly police the use of motor vehicles upon the public highways, is a revenue measure. That it does raise considerable revenue in excess of an amount necessary for police purposes, and that it appropriates the money so raised to a fund for the construction and maintenance of public highways, is quite true. In this connection, however, it may be observed that the license, or fee, is exacted not upon the ownership of the motor vehicle, but upon the right to use it upon the public highways.

Respondent also contends that said sec. 16 is an attempted taxation in violation of the rule of uniformity required by sec. 5, art. 7 of the constitution, which is as follows: ''All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal, *provided,* that the legislature may allow such exemptions from taxation from time to time as shall seem necessary and just, and all existing exemptions provided by the laws of the territory, shall continue until changed by the legislature of the state, *provided, further,* that duplicate taxation of property for the same purpose during the same year, is hereby prohibited.''

The respondent, in presenting his petition for a writ of *habeas corpus,* and the district court, in granting it and in ordering him discharged from custody, seem to have proceeded upon one of two erroneous theories; either that the legislature of the state of Idaho possesses no inherent power in matters of taxation but may raise revenue only in conformity to a grant of authority so to do, expressed in the constitution, or that a prohibition against raising revenue in the manner

attempted by said chapter 179 is expressed in or is to be implied from the language of the constitution.

In case of *Achenbach v. Kincaid, supra,* this court said: "As to the question of taxation: "The legislature possesses plenary power, except as such power may be limited or restricted by the constitution. It is not necessary that the constitution shall contain a grant of power to the legislature to deal with the question of taxation. It is sufficient proof of its power if there be found in the constitution no prohibition against what the legislature has attempted to do."

As stated by the supreme court of Oregon in the case of the *State v. Cochran,* 55 Or. 157, 104 Pac. 419, 105 Pac. 884: "A state constitution unlike a federal constitution is one of limitation and not a grant of powers, and any act adopted by the legislature not prohibited by the state constitution is valid, and the inhibition must expressly or impliedly be made to appear beyond a reasonable doubt." (See *St. Joe Improvement Co. v. Laumierster,* 19 Ida. 66, 112 Pac. 683; *Walker v. City of Spokane,* 62 Wash. 312, Ann. Cas. 1912C, 994, 113 Pac. 775; *People ex rel. Simon v. Bradley,* 207 N. Y. 592, 101 N. E. 766.)

"In passing on the constitutionality of a statute, every reasonable doubt as to its validity will be resolved in favor of sustaining the statute. (*People v. Rose,* 203 Ill. 46, 67 N. E. 746; *Board of Trustees of House of Reform v. City of Lexington,* 112 Ky. 171, 65 S. W. 350; *Commonwealth v. Barney,* 115 Ky. 475, 74 S. W. 181; *State v. Thompson,* 144 Mo. 314, 46 S. W. 191; *Ex parte Loving,* 178 Mo. 194, 77 S. W. 508.)

"An act of the legislature will not be declared unconstitutional unless in plain violation of some provisions of the constitution. (*Brady v. Mattern,* 125 Iowa, 158, 106 Am. St. 291, 100 N. W. 358.)

"The court in construing a statute must adopt such construction as will sustain the constitutionality of the statute, where that can be done without doing violence to the language thereof. (*State v. Barrett,* 172 Ind. 169, 87 N. E. 7.) The courts must as far as possible uphold and give effect to all

statutes enacted by the legislature. (*Commonwealth v. International Harvester Co.,* 131 Ky. 768, 115 S. W. 755.)''

Judge Cooley in vol. 1 of his works on Taxation, third edition, page 9, says:

''Everything to which the legislative power extends may be the subject of taxation, whether it be person or property, or possession, franchise or privilege, or occupation or right. Nothing but express constitutional limitation upon legislative authority can exclude anything to which the authority extends from the grasp of the taxing power, if the legislature in its discretion shall at any time select it for revenue purposes; and not only is the power unlimited in its reach as to subjects, but in its very nature it acknowledges no limits, and may be carried even to the extent of exhaustion and destruction, thus becoming in its exercise a power to destroy. If the power be threatened with abuse, security must be found in the responsibility of the legislature that imposes the tax to the constituency which must pay it. The judiciary can afford no redress against oppressive taxation, so long as the legislature, in imposing it, shall keep within the limits of legislative authority, and violate no express provision of the constitution. The necessity for imposing it addresses itself to the legislative discretion, and it is or may be an urgent necessity which will admit of no property or other conflicting right in the citizen while it remains unsatisfied.'' (See, also, *Lowe et al. v. Board etc.,* 156 Ind. 163, 59 N. E. 466.)

Certainly our constitution does not expressly prohibit the people of Idaho from raising revenue in the manner provided in chapter 179 of the Session Laws of 1913, and while it is true there are three methods of raising revenue expressed in sec. 2 of art. 7 of the constitution, we cannot infer from this that an implication arises prohibiting the state from also raising revenue pursuant to its inherent power to do so in any other manner its legislature may see fit to adopt.

It is earnestly urged that this is not a property tax, that it is a license and raises more revenue than sufficient to police motor vehicles upon the public highway. We are fully convinced that in this contention respondent is correct, but it

does not follow that the law is in contravention of the constitution.

By way of sustaining his contention that this law is intended to raise revenue, respondent quotes from *Rosebloom v. State,* 64 Neb. 343, 89 N. W. 1055, 57 L. R. A. 922, as follows: "We agree with counsel in the view that the primary and paramount, if not the only, object of the law, is to obtain revenue, by imposing a tax upon the business of peddling. The only thing the peddler is required to do is to pay his tax, and exhibit the appropriate evidence of payment to any person who may wish to see it. The only thing he is forbidden to do is to pursue his calling without first having paid the tax. No police inspection or supervision is provided for. If the things commanded and forbidden are to be regarded as features of regulation or repression, they are not, to say the least, so pronounced or conspicuous as to suggest the idea that the law is referable to the police power, rather than the power of taxation."

By beginning to quote from the point in that decision where respondent leaves off, the attitude of the supreme court of Nebraska and of this court upon this question is very clearly stated as follows:

"But granting the contention of counsel for defendant that the statute is a revenue measure, pure and simple, we are not able to discover any valid objection to the enforcement of it in the manner provided by the legislature. It is settled doctrine in this and in every other jurisdiction that courts will not adjudge statutes unconstitutional unless they are plainly so. Now, with what express provision of the higher law does the statute in question clash? We know of none."

Respondent seeks to distinguish from this case that of *Salt Lake City v. Christensen Co.,* 34 Utah, 38, 95 Pac. 523, 17 L. R. A., N. S., 898, where a revenue raising license fee was sustained, and with that end in view quotes from the Utah constitution as follows: "Nothing in this constitution shall be construed to prevent the legislature from providing a stamp tax, or a tax on income, occupation, license, franchise or mortgages." This paragraph of the Utah constitution merely

points out the proper construction of that document, which would prevail even in the absence of the paragraph.

In like manner respondent seeks to distinguish from this case that of *Ex parte Schuler,* 167 Cal. 282, 139 Pac. 685, decided by the supreme court of California, which upholds the right of the legislature of California to enact a law exacting from the owners of motor vehicles a revenue for their use upon the public highways, which revenue was to be used for the upkeep of said highways, by reason of this paragraph in the California constitution: "The legislature shall have power to establish a system of state highways or to declare any road a state highway, and to pass all laws necessary or proper to construct and maintain the same; and to extend aid for the construction and maintenance in whole or in part of any county highway." It is perfectly clear that the foregoing provision of the California constitution neither grants to nor takes from the legislature of that state the power to raise revenue. Said paragraph only points out one of the ways in which the moneys of the state may be expended.

The respondent also quotes at considerable length from the case of *Vernor et al. v. Secretary of State,* a Michigan case, reported in 179 Mich. 157, 146 N. W. 338. This case is not in point except to show that the principal purpose of the law was to raise revenue rather than a police regulation. The act was held to be unconstitutional upon the ground that the title was insufficient, not upon the ground that revenue cannot be raised by requiring those who operate motor vehicles upon the public highway to procure and pay for a license so to do.

The respondent maintains that the law under consideration violates sec. 5, art. 7 of the constitution in that the registration fees therein provided for are not uniform upon the same class of subjects and that it does not secure a just valuation of the property thus taxed.

The provision of that section of our constitution, requiring all taxes to be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and to be levied and collected under general laws which shall prescribe such regulations as shall insure a just valuation for

taxation of all property, real or personal, refers solely to taxation according to the commonly accepted meaning of that term, by assessment, levy and collection and does not apply to license or registration fees. It is to be borne in mind that the law under consideration does not impose a tax upon property, but imposes a registration fee, or license, upon the privilege of operating motor vehicles upon the public highways.

It has been frequently held by this court that liquor licenses, pool and billiard table licenses, taxes by way of licenses imposed upon persons and corporations engaged in loaning money within the state, and upon railway and express companies doing business within the state, are not taxes contemplated by secs. 2 and 5 of art. 7 of the constitution, but constitute a separate and distinct way of raising revenue, independent of taxation in the commonly accepted meaning of that term. (*State v. Doherty*, 3 Ida. 384, 29 Pac. 855; *State v. Union Central Insurance Co.*, 8 Ida. 240, 67 Pac. 647; *State v. Jones*, 9 Ida. 693, 75 Pac. 819; *In re Gale*, 14 Ida. 761, 95 Pac. 679; *Northern Pacific Ry. Co. v. Gifford, Secretary of State*, 25 Ida. 196, 136 Pac. 1131. See, also, *Salt Lake City v. Christensen Co., supra,* and *Ex parte Schuler, supra.*)

The respondent complains that, as between the owners of motor vehicles, the law is unfair and unjust; that the owner of such a vehicle worth but a couple of hundred dollars is required to pay the same tax as the owner of one worth two or three thousand dollars, or more, provided, of course, the machines happen to be of the same horse-power. We fail to see wherein the value of the machine affects the value of the right to use it upon the public highway. Even though this act does not fairly distribute the burden of building and maintaining roads among the owners of motor vehicles used upon them, or between that class of persons and other citizens of the state, it may be said with equal force that ever since the dawn of civilization the problem of raising revenue has been with governments, as with individuals, one of the chief causes of concern, and that a scientific and satisfactory solution of it has never been reached. If chapter 179 of the Session Laws of 1913 is unskillfully drawn or the plan to raise revenue

therein provided is unscientific, or for any other reason unsatisfactory, recourse for its correction must be had to the legislature and not to the courts, for this branch of the government cannot declare an act of the legislature unconstitutional unless it violates some provision of the constitution.

The supreme court of New Jersey in the case of *Kane v. State,* 81 N. J. L. 594, Ann. Cas. 1912D, 237, 80 Atl. 453, in upholding a statute much like the one under consideration, said: "The imposition is a license or privilege tax charged in the nature of compensation for the damage done to the roads of the state by the driving of these machines over them, and is properly based, not upon the value of the machine, but upon the amount of destruction caused by it."

In the recent decision by the supreme court of the United States in the case of *Hendrick v. Maryland,* 235 U. S. 610, 59 L. ed. 140 (U. S. Sup. Ct. Advance Opinions of February 1, 1915), a case closely resembling this in many important particulars, the opinion delivered by Mr. Justice McReynolds is, in part, as follows: "The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves. Their success depends on good roads, the construction and maintenance of which are exceedingly expensive; and in recent years insistent demands have been made upon the states for better facilities, especially by the ever-increasing number of those who own such vehicles. As is well known, in order to meet this demand and accommodate the growing traffic the state of Maryland has built and is maintaining a system of improved roadways. Primarily for the enforcement of good order and the protection of those within its own jurisdiction the state put into effect the above described general regulations, including requirements for registration and licenses. A further evident purpose was to secure some compensation for the use of facilities provided at great cost from the class for whose needs they are essential, and whose operations over them are peculiarly injurious.

Idaho is a mountainous state wherein vast sums of money have been, and still greater sums must in the future, be

expended in the construction and maintenance of public highways. The motor vehicle is a conveyance requiring a different and better class of roads than ordinary traffic has heretofore demanded. These motor vehicles have been found to be exceedingly destructive of the highways, and particularly is this true of those propelled by engines of great power especially when driven at a high rate of speed. It seems probable that by reason of these conditions the legislature enacted said chapter 179, but whatever the reason for its enactment may have been, said chapter is not repugnant to the provisions of the constitution.

The order of the district court granting the writ of *habeas corpus* and discharging the defendant from custody is reversed with instruction to said court to quash the writ and to remand the respondent to custody.

Sullivan, C. J., and Budge, J., concur.