Submitted on briefs July 11, affirmed July 29, 1922.

## CAMAS STAGE CO., INC., *v.* KOZER.

(209 Pac. 95.)

**Constitutional Law—Construction Supporting Validity of Act Preferred.**

1. Where a statute is fairly susceptible of a construction sustaining the validity of the act and a construction rendering it unconstitutional, the former construction must be adopted.

**Statutes—Declared Purpose Controlling Unless Incompatible With Effect.**

2. The declared purpose of an act is to be accepted as true, unless incompatible with its meaning and effect.

Commerce—Congress not Having Acted, State Automobile Law, Requiring Registration of Interstate Automobiles, Valid.

3. Congress having passed no statute on the subject, General Laws of 1921, page 707, Sections 4, 37, 51, and Section 25 as amended by General Laws (Special Session) of 1921, page 24, Section 3, requiring automobile owners to pay registration fees before driving their cars on the highway, are not violations of Constitution of United States, Article I, Section 8, authorizing Congress to regulate interstate commerce, as applied to a nonresident corporation operating motor vehicles for hire between a point within and a point without the state.

Constitutional Law—Licenses—State Automobile Law, Requiring Registration, Valid Exercise of Police Power.

4. General Laws of 1921, page 707, as amended by General Laws (Special Session) of 1921, page 23, requiring owners of motor vehicles to pay registration fees before driving them on the highways, being an enactment within the state's police power, is not violative of Fourteenth Amendment of the federal Constitution as applied to a nonresident corporation.

Corporations—Foreign Corporation, Operating Bus Line Between Point Within and Point Without the State, Held "Doing Business Within the State."

5. A foreign corporation, engaged in carrying passengers for hire by motor vehicles between a point within and a point without the state, is doing business within the state within General Laws of 1921, page 734, Section 37, exempting nonresidents from paying automobile license fees, and providing that foreign corporations doing business within the state shall be considered residents.

Licenses—Party Claiming Exemption must Present Clear Case.

6. Automobile owner, claiming an exemption from a statute imposing a license on automobiles, has the burden of proving the exemption, and must present a clear case.

Licenses—Fee Presumed Reasonable.

7. Since nothing to the contrary appears on the face of General Laws of 1921, page 707, as amended by General Laws (Special Session) of 1921, page 23, requiring owners of motor vehicles to pay registration fees before driving them on the highways, or has been established by the evidence, the presumption is that the license fee is reasonable.

Statutes—Magazine Article Held not Authority as to Meaning.

8. An article published in a magazine is not authority by which the court can ascertain the meaning of a statute.

---

3. License fee imposed on automobiles using highways of state as regulation of interstate commerce, see note in Ann. Cas. 1912D, 239.

Licenses—Graduated Fee for Operating Automobiles on Highway Held Valid.

9. General Laws of 1921, page 707, as amended by General Laws (Special Session) of 1921, page 23, imposing a graduate automobile license fee dependent on the weight of the car, the revenue so derived, being used for highway purposes and being a privilege and not a property tax, is a valid enactment, for its object is to preserve the highways and the public welfare.

Licenses—Taxation—Statute Imposing Privilege Tax and Exempting Property from Ad Valorem Tax Valid.

10. General Laws of 1921, page 707, imposing a privilege tax on automobiles, and Section 26 thereof, exempting automobiles from paying an *ad valorem* tax, is valid.

Equity—Maxim One Seeking Equity must do Equity Applied.

11. In an action to restrain the state from collecting automobile registration fees, where plaintiff admitted that there was some money due to the state, the maxim one who seeks equity must do equity applies.

From Marion: GEORGE G. BINGHAM, Judge.

In Banc.

This is a suit in equity. The plaintiff is a corporation of the State of Washington, engaged in operating motor vehicles carrying passengers for hire within the State of Washington and between the States of Washington and Oregon, and, while thus engaged, drives its motor vehicles over the highways of the State of Oregon. Sam Kozer, the defendant, is Secretary of the State of Oregon, and, by virtue of his office, is required to enforce the provisions of the Oregon motor vehicle law.

The purpose of this, suit is to restrain the Secretary of State from enforcing the provisions of the motor vehicle law in the matter of collecting registration fees demanded by him.

9. On validity of excise or license tax upon motor vehicles, see notes in 1 L. R. A. (N. S.) 215; 37 L. R. A. (N. S.) 440; 52 L. R. A. (N. S.) 949; L. R. A. 1915D, 322.

10. On validity of statute imposing license tax on automobiles as affected by constitutional provisions in relation to taxation, see note in 5 A. L. R. 759.

The Oregon motor vehicle law provides that "every owner of a motor vehicle, * * shall, * * before he operates or drives the same upon the highways of this state," cause the same to be registered: Sec. 4, Chap. 371, General Laws of Oregon of 1921.

Section 25, Chapter 371, General Laws of Oregon of 1921, as amended by Section 3, Chapter 8, General Laws of Oregon, Special Session, 1921, establishes the fees required to be paid to the Secretary of State upon registration and before the issuance of license, as follows:

"Motor vehicles, except motor-trucks, shall pay the following fees, based on the light weight of such vehicles, to wit:

| | |
|---|---|
| Weighing 1,700 pounds or less .............. | $15.00 |
| Weighing over 1,700 pounds and not over 2,100 pounds ......................... | 22.00 |
| Weighing over 2,100 pounds and not over 2,500 pounds ......................... | 28.00 |
| Weighing over 2,500 pounds and not over 2,900 pounds ......................... | 34.00 |
| Weighing over 2,900 pounds and not over 3,300 pounds ......................... | 40.00 |
| Weighing over 3,300 pounds and not over 3,700 pounds ......................... | 47.00 |
| Weighing over 3,700 pounds and not over 4,100 pounds ......................... | 55.00 |
| Weighing over 4,100 pounds and not over 4,500 pounds ......................... | 62.00 |
| Weighing over 4,500 pounds and not over 4,900 pounds ......................... | 71.00 |
| Weighing over 4,900 pounds and not over 5,300 pounds ......................... | 79.00 |
| Weighing over 5,300 pounds and not over 5,700 pounds ......................... | 88.00 |
| Weighing over 5,700 pounds .............. | 97.00 |

* *

"Motor busses shall pay $4.00 for each passenger, in addition to the fees prescribed according to the

weight of the motor vehicle, at the rated passenger capacity, allowing twenty inches of seating space for each passenger."

The weight and seating capacity of each of plaintiff's motor vehicles so operated is as follows:

One "White" automobile, bearing Washington License No. 185087; weight 4500 ℔s.; seating capacity, 12 passengers;

One "White" automobile, bearing Washington License No. 185086; weight 4810 ℔s.; seating capacity, 12 passengers;

One "White" automobile, bearing Washington License No. 185088; weight 5415 ℔s.; seating capacity, 12 passengers;

One "White" automobile, bearing Washington License No. 185089; weight 5800 ℔s.; seating capacity 15 passengers.

If the provisions of the Oregon motor vehicle law are enforced against the plaintiff, the company will be compelled to pay a respective license fee, or tax, of $110, $119, $136, and $157, on the motor vehicles described above.

Such "registration and license fees imposed by this act * * shall be in lieu of all other taxes and licenses" exacted by the state upon the vehicle so registered and licensed: Sec. 26, Chap. 371, Gen. Laws of Oregon of 1921.

Section 37 of the act of 1921 provides for the exemption of nonresident owners, but such favor does not include a foreign corporation conducting business in Oregon.

Plaintiff avers that the Oregon motor vehicle law, in so far as it attempts to require it to pay an annual license fee, or tax, upon each of its motor vehicles, is void, in that it is in contravention of subdivision 3, Section 8, Article I, of the Constitu-

tion of the United States, and for other reasons hereinafter noted.

The defendant filed his demurrer, challenging the sufficiency of the complaint and the jurisdiction of the court of the subject matter of the suit. The demurrer was sustained and the suit dismissed. Plaintiff assigns error of the court in sustaining defendant's demurrer and in rendering and entering a decree dismissing its amended complaint.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Dan E. Powers* and *Mr. F. E. Swope.*

For respondent there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Miss Grace E. Smith,* Assistant Attorney General.

BROWN, J.—There is a marked difference between the regulatory act designated Chapter 136, Laws of 1905, under which 218 automobiles were registered, and the regulatory law in force in 1921, under which 118,615 motor vehicles were registered. The legislation of this state, in providing millions upon millions of dollars for the construction and reconstruction of highways, has kept pace with the ever-increasing number of motor vehicles used upon the roads of the state. The legislative assembly, in the enactment of regulatory laws, has declared the necessity for good roads in the successful operation thereon of the motor vehicle, and, likewise, has recognized the destructive character of such vehicles when driven upon the highways.

That we shall learn and give effect to the intention of the legislature is a primary rule in the ex-

position of statutes. The Oregon motor vehicle law is the written expression of the legislative will relating to the regulation of certain vehicles that may be operated upon the highways of this state. We have searched all the laws enacted by our legislative assembly pertaining to the regulation of motor vehicles, for the purpose of discovering the legislative will.

The plaintiff asserts that this act, as applied to it, offends against the interstate commerce clause of the Constitution of the United. States.

1. A rule so commonplace that it requires no citation of authority to sustain it is that where a statute is fairly susceptible of two constructions, one of which sustains the validity of the act while the other will render it unconstitutional, the construction that will support the validity of the law must be adopted.

2. The legislature declared that the "purpose, object and intent" of the motor vehicle law "is to provide a comprehensive system for the regulation of all motor and other vehicles."

We hold that—

"The declared purpose of the act is to be accepted as true, unless incompatible with its meaning and effect." *White Dental Mfg. Co.* v. *Commonwealth,* 212 Mass. 35 (98 N. E. 1056, Ann. Cas. 1913C, 805, 808); citing *Hazen* v. *Essex Co.,* 12 Cush. (Mass.) 475; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 145 (Ann. Cas. 1912B, 1312, 55 L. Ed. 389, 31 Sup. Ct. Rep. 342).

The character of the registration fees may be determined from the act.

Section 51 of Chapter 371, General Laws of Oregon of 1921, enacts:

"The provisions of this act contained are declared to be an exercise of the police powers of the State of Oregon, and this act shall be known as the 'Oregon Motor Vehicle Law.' "

While not absolutely controlling, the legislative designation is an important factor in determining the character of the tax imposed: *Portland* v. *Portland Ry. Light & Power Co.*, 80 Or. 271, 305 (156 Pac. 1058), citing Gray, Lim. of Tax. Power, p. 42; *Briedwell* v. *Henderson*, 99 Or. 506, 514 (195 Pac. 575).

Among the powers expressly granted to the national government is the control of interstate commerce. Article I, Section 8, of the Constitution, provides that—

"The Congress shall have power * * , to regulate commerce with foreign nations, and among the several states * * ."

Congress has exercised the power granted it in relation to interstate commerce in a variety of acts; but it has passed no statute that in any way inhibits the exaction by the state of the fees in question by way of compensation from the plaintiff for the privilege of driving its motor-cars over the highways of this state.

State laws may affect interstate commerce without conflicting with the constitutional provision appealed to.

In *Transportation Co.* v. *Parkersburg*, 107 U. S. 691, 699 (27 L. Ed. 584, 2 Sup. Ct. Rep. 732, see, also, Rose's U. S. Notes), it was held that a state may erect or authorize the construction of wharves along the banks of its navigable rivers which are used for commerce between the states, and charge, or authorize to be charged, wharfage fees for the privilege

of receiving and landing thereon passengers and freight which come from other states, without infringing upon the commerce clause of the Constitution of the United States.

In *Huse* v. *Glover*, 119 U. S. 543 (30 L. Ed. 487, 7 Sup. Ct. Rep. 313), it was held that a state may construct locks in such rivers in order to improve the navigation thereof, and charge reasonable tolls to persons using such locks while engaged in interstate commerce,

In *Lindsay & Phelps Co.* v. *Mullen,* 176 U. S. 126 (44 L. Ed. 400, 20 Sup. Ct. Rep. 325), it was held that a state may construct or authorize the construction of booms for the purpose of increasing the facilities with which the business of floating and gathering logs may be conducted thereon, and lawfully charge, or authorize to be charged, reasonable sums for the use of such booms in the floating of logs from a point within the state to a point outside thereof, or *vice versa.*

The case of *Kane* v. *New Jersey,* 242 U. S. 160 (61 L. Ed. 222, 37 Sup. Ct. Rep. 30), affirming 81 N. J. L. 594 (80 Atl. 453, Ann. Cas. 1912D, 237), is illuminating, instructive and strictly in point. The New Jersey statute provides, among other things, that:

"Every resident of this state, and every non-resident, whose automobile shall be driven in this state, shall, before using such vehicle on the public highways, register the same, and no motor vehicle shall be driven unless so registered."

Kane, a resident of the State of New York, while driving his automobile along the highways of the State of New Jersey on a journey from his place of residence to some point in the State of Pennsyl-

vania, was arrested for violating the motor vehicle law of New Jersey, charged with not having registered his machine or paid the fee required for such registration. Prosecution for his offense followed the arrest, resulting in his conviction. The conviction was affirmed in the review of the cause in the Supreme Court, and by the Court of Errors and Appeals, of the State of New Jersey. On review of that case in the Supreme Court of the United States, Mr. Justice BRANDEIS, in speaking for the court, said:

"The moneys received from licenses and registration fees in excess of the amount required for the maintenance of the Motor Vehicle Department are to be applied to the maintenance of the improved highways. * * The following facts were stipulated: Kane had been duly licensed as a driver under the laws of both New York and New Jersey. He had registered his car in New York, but not in New Jersey. * * When arrested he was on his way from New York to Pennsylvania. The aggregate receipts from license and registration fees for the year exceeded the amount required to defray the expenses of the Motor Vehicle Department, so that a large sum became available for maintenance of the improved roads of the state. Kane contended that the statute was invalid as to him, a nonresident, because it violated the Constitution and laws of the United States *regulating interstate commerce* and also because it violated the Fourteenth Amendment. * *

"The power of a state to regulate the use of motor vehicles on its highways has been recently considered by this court and broadly sustained. It extends to nonresidents as well as to residents. It includes the right to exact reasonable compensation for special facilities afforded, as well as reasonable provisions to insure safety, and it is properly exercised in imposing a license fee graduated

104 Or.—39

according to the horse power of the engine: *Hendrick* v. *Maryland,* 235 U. S. 610 [59 L. Ed. 385, 35 Sup. Ct. Rep. 140]. * * It is clearly within the discretion of the state to determine whether the compensation for the use of its highways by automobile shall be determined by way of a fee, payable annually or semi-annually, or by a toll based on mileage or otherwise. * * In *Hendrick* v. *Maryland,* it appeared only that the nonresident drove his automobile *into* the state. In this case it is admitted that he was driving *through* the state. This distinction is of no significance."

In the case of *Hendrick* v. *Maryland,* 235 U. S. 610, 622, 624 (59 L. Ed. 385, 35 Sup. Ct. Rep. 140), Mr. Justice McReynolds, in expressing the opinion of the court, said:

"The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves. Their success depends on good roads, the construction and maintenance of which are exceedingly expensive; and in recent years insistent demands have been made upon the state for better facilities, especially by the ever increasing number of those who own such vehicles. As is well known, in order to meet this demand and accommodate the growing traffic the state of Maryland has built and is maintaining a system of improved roadways. Primarily for the enforcement of good order and the protection of those within its own jurisdiction, the state put into effect the above described general regulations, including requirements for registration and licenses. A further evident purpose was to secure some compensation for the use of facilities provided at great cost, from the class for whose needs they are essential and whose operations over them are peculiarly injurious.

"In the absence of national legislation covering the subject a state may rightfully prescribe uniform

regulations necessary for public safety and order, in respect to the operations upon its highways of all motor vehicles—those moving in *interstate commerce* as well as others. And to this end, it may require the registration of such vehicles and the licensing of their drivers, charging therefor reasonable fees, graduated according to the horse power of the engines—a practical measure of size, speed, and difficulty of control. This is but an exercise of the police power uniformly recognized as belonging to the state and essential to the preservation of the health, safety and comfort of their citizens; and it does not constitute a direct and material burden on interstate commerce. * * The amount of the charges and the method of collection are primarily for determination by the state itself; and so long as they are reasonable and are fixed according to some uniform, fair and practical standard, they constitute no burden on interstate commerce: *Trans. Co.* v. *Parkersburg,* 107 U. S. 691, 699 (27 L. Ed. 584, 2 Sup. Ct. Rep. 732); *Huse* v. *Glover,* 119 U. S. 543, 548, 549 (30 L. Ed. 487, 7 Sup. Ct. Rep. 313); *Monongahela Nav. Co.* v. *United States,* 148 U. S. 312, 329, 330 (37 L. Ed. 463, 13 Sup. Ct. Rep. 622); *Minnesota Rate Cases,* 230 U. S. 352, 405 (Ann. Cas. 1916A, 18, 48 L. R. A. (N. S.) 1151, 57 L. Ed. 1511, 33 Sup. Ct. Rep. 729, see, also, Rose's U. S. Notes), and authorities cited. * * The statute is not a mere revenue measure, and a discussion of the classifications permissible under such an act would not be pertinent.''

3. If it be a fact that the enforcement of this act in the case at issue may incidentally affect interstate commerce, such regulations will not be for that reason declared invalid. They are lawful until Congress acts: *Kane* v. *State, supra; Hendrick* v. *Maryland, supra; Minnesota Rate Cases, supra; Monongahela Nav. Co.* v. *United States, supra; Covington Bridge Co.* v. *Kentucky,* 154 U. S. 204, 209 (38 L. Ed. 962, 14 Sup. Ct. Rep. 1087); *Huse* v. *Glover,*

*supra; Trans. Co.* v. *Parkersburg, supra; Lindsay &
Phelps Co.* v. *Mullen, supra.*

The plaintiff invokes the protection of the Four-
teenth Amendment to the Constitution. That amend-
ment does not offer the plaintiff a refuge from the
demands of the motor vehicle law, which is an enact-
ment within the police power of the state.

The Supreme Court of the United States has
frequently declared that the limitations contained
in the Fourteenth Amendment were not designed to
limit, or in any way interfere with, the state's exer-
cise of its police power: *Barbier* v. *Conley,* 113 U. S.
27 (28 L. Ed. 923, 5 Sup. Ct. Rep. 357); *Jones* v.
*Brim,* 165 U. S. 180 (41 L. Ed. 677, 17 Sup. Ct. Rep.
282); *L'Hote* v. *New Orleans,* 177 U. S. 587, 596
(44 L. Ed. 899, 20 Sup. Ct. Rep. 788); *Lochner* v.
*New York,* 198 U. S. 45, 53 (3 Ann. Cas. 1133, 49
L. Ed. 937, 25 Sup. Ct. Rep. 539).

In *Barbier* v. *Conley, supra,* Mr. Justice FIELDS
wrote:

"But neither the amendment (Fourteenth Amend-
ment)—broad and comprehensive as it is—nor any
other amendment, was designed to interfere with
the power of the state, sometimes termed its 'police
power,' to prescribe regulations to promote the
health, peace, morals, education and good order of
the people, and to legislate so as to increase the in-
dustries of the state, develop its resources, and add
to its wealth and prosperity."

In the case of *Union Fishermen's Co.* v. *Shoe-
maker,* 98 Or. 659, 674 (193 Pac. 576), this court
defines "police power" as follows:

" * * A concise statement, which emphasizes the
thought that the field within which the police power
may be exerted is very broad, is found in *State* v.
*Redmon,* 134 Wis. 89, 105 (114 N. W. 137, 126 Am.

St. Rep. 1003, 15 Ann. Cas. 408, 14 L. R. A. (N. S.)
229), where it is said: 'It is the power to make all
laws which in contemplation of the Constitution
promote the public welfare.'

"The police power embraces the whole sum of
inherent sovereign power which the state possesses,
and, within constitutional limitations, may exercise
for the promotion of the order, safety, health,
morals, and general welfare of society: 12 C. J. 904;
*Stettler* v. *O'Hara,* 69 Or. 519, 531 (139 Pac. 743,
Ann. Cas. 1916A, 217, L. R. A. 1917C, 944); *Mill
Creek Coal & Coke Co.* v. *Pub. Service Com.*
(W. Va.), 100 S. E. 557 (7 A. L. R. 1081)."

4. The term "police power" has sometimes been
defined and used in a narrow sense, embracing
merely regulations for the preservation of the order,
peace, health, morals and safety of the community.
More recently, however, it has been extended to em-
brace a larger welfare.

The police power of the state is not, and, in the
nature of things, cannot be, a fixed and rigid quan-
tity. Changed conditions require different regula-
tions.

5. The plaintiff asserts exemption from the pay-
ment of the fees established by the act, and avers that
it is not doing business in this state within the mean-
ing of Section 37 thereof.

Plaintiff transacts some substantial part of its
ordinary business in Oregon: 14A C. J., §§ 3977, 3992.
In the conduct of its business it carries passengers
for hire, by motor vehicle, from the State of Wash-
ington to Portland, Oregon, and likewise carries pas-
sengers for hire from that point in the State of Ore-
gon over the highways of Oregon to the State of
Washington.

6. We hold that plaintiff's claim is without merit. Moreover, it is a rule of frequent application that he who would shelter himself under an exemption clause must present a clear case, free from all reasonable doubt, as such laws, being in derogation of the general rule, must be strictly construed as against the person claiming the exemption and in favor of the public: 17 R. C. L. 522; *Northwest Auto Co.* v. *Hurlburt, supra,* p. 398 (207 Pac. 161); *Wallace* v. *Board of Equalization,* 47 Or. 584 (86 Pac. 365). In the enforcement of the law under consideration, the collection of a fee for registration is the rule and exemption the exception; therefore, the burden of establishing it is upon him who claims it: 1 Cooley on Taxation (3 ed.), p. 456.

Under the facts in the case at bar, our holding is not inconsistent with the following cases decided on a different set of facts: *Hacheny* v. *Leary,* 12 Or. 40 (7 Pac. 329); *Bertin & Lepori* v. *Mattison,* 69 Or. 470 (139 Pac. 330); *Spaulding* v. *McNary,* 64 Or. 491 (130 Pac. 391, 1128); *Vermont Farm Machine Co.* v. *Hall,* 80 Or. 308 (156 Pac. 1073); *Deardorf* v. *Idaho Nat. Harvester Co.,* 90 Or. 425 (177 Pac. 33); *Endicott, Johnson & Co.* v. *Multnomah Co.,* 96 Or. 679 (190 Pac. 1109); *Major Creek Lumb. Co.* v. *Johnson,* 99 Or. 172 (195 Pac. 177).

7. Nothing to the contrary appearing upon the face of the law itself or having been established by evidence, we assume that the amount of the license fee is reasonable: Huddy on Automobiles, p. 120; *Vernor* v. *Secretary of State,* 179 Mich. 157 (Ann. Cas. 1915D, 128, 146 N. W. 338); Berry on Automobiles, p. 111.

8. The plaintiff avers that the fee demanded by the law for registration is, in part, a property tax,

and offers in support of his contention an article published in a magazine. This article printed in plaintiff's brief is not authority by which we may ascertain the meaning of the law.

9. The Oregon motor vehicle law, by its express terms, exacts a fee frequently called by the courts a "privilege tax" for operating motor vehicles upon the highways of this state. It is not a tax upon property. It is a charge upon privilege. That such a tax is constitutional has been so well established by judicial decision that there can be no doubt as to its validity. The Oregon motor vehicle law does not tax the property of plaintiff one dollar. It does, however, exact compensation for the privilege of operating its cars upon the highways of the state.

2 Cooley on Taxation (3 ed.), at pages 1125, 1126, says:

"There are some cases in which levies are made and collected under the general designation of taxes or some term employed in revenue laws to indicate a particular class of taxes where the imposition of the burden may fairly be referred to some other authority than to that branch of the sovereign power of the state under which the public revenues are apportioned and collected. The reason is that the imposition has not for its object the raising of revenue, but looks rather to the regulation of relative rights, privileges and duties as between individuals; to the conservation of order in the political society, to the encouragement of industry * * . The one is made for the regulation and the other for revenue."

There is a diversity of expression by the courts as to the term applied to the exactions in regulatory measures. In *Northwest Auto Co.* v. *Hurlburt, supra,* Mr. Justice McBride wrote:

"The courts, in speaking of financial exactions of the character herein discussed, have sometimes called them 'licenses' and sometimes 'privilege taxes.' Again, they are sometimes spoken of as license fees or license taxes. But by whatever name they may be called, they partake of the nature of a tax in many respects, and the designation given in the statute is immaterial, the courts being interested in the substance, rather than in the name. In *Briedwell* v. *Henderson*, 99 Or. 506 (195 Pac. 575), we held it to be properly called a 'privilege tax.'"

The legislative assembly was empowered to enact a law requiring a tax on privilege, and exempting such property from paying an *ad valorem* tax.

In *Briedwell* v. *Henderson, supra,* we quoted with approval the following:

"What classes of property shall be taxed and what shall be exempted except as restricted by the Constitution is a question that rests with the discretion of the legislature. It is within legislative authority to exempt from other forms of taxation property which pays a specific tax, whether or not the tax is levied on the property itself, or on the right to use it in a certain way." *Jasnowski* v. *Board of Assessors*, 191 Mich. 287 (157 N. W. 891).

Again, in *Briedwell* v. *Henderson, supra,* we designated the registration fee a tax on privilege and supported the statement with the following:

"The imposition is a license or privilege tax charged in the nature of compensation for the damage done to the roads * * by the driving of these machines over them, and is properly based, not upon the value of the machine, but upon the amount of destruction caused by it." *Kane* v. *State*, 81 N. J. Law, 594 (80 Atl. 543, Ann. Cas. 1912D, 237, L. R. A. 1917B, 553); *In re Kessler*, 26 Idaho, 764 (146 Pac. 113, Ann. Cas. 1917A, 228, L. R. A. 1915D, 322).

"A valuable case is *Ard* v. *People,* 66 Colo. 480 (182 Pac. 893), citing *Atkins* v. *State Highway Department* (Tex. Civ. App. 1918), 201 S. W. 226; *Ex parte Hoffert,* 34 S. D. 271 (148 N. W. 20, 52 L. R. A. (N. S.) 949); *In re Kessler,* 26 Idaho, 764 (146 Pac. 113, Ann. Cas. 1917A, 228, L. R. A. 1915D, 322); *State* v. *Lawrence,* 108 Miss. 291 (66 South. 745, Ann. Cas. 1917E, 322); *Kane* v. *State,* 81 N. J. Law, 594 (80 Atl. 453, Ann. Cas. 1912D, 237, L. R. A. 1917B, 553); Berry on Automobiles, § 91; likewise, the case of *State* v. *Collins,* 94 Wash. 312 (162 Pac. 556), and authorities there cited; *State ex rel. Fargo* v. *Wetz,* 40 N. D. 299 (168 N. W. 835, 5 A. L. R. 731, and valuable note)."

The privilege tax exacted for the registration of motor vehicles is used exclusively for highway purposes.

The motor vehicle legislation discloses specific facts depending upon a specific scheme of legislation in relation to the operation of motor vehicles upon the highways, and applicable thereto is Marshall's canon of constitutional construction.

"Let the end be legitimate. Let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited but consist with the letter and spirit of the Constitution, are constitutional." *McCulloch* v. *Maryland,* 4 Wheat. 316, 421 (4 L. Ed. 579, see, also, Rose's U. S. Notes).

10. From the declaration of the legislative assembly and from the provisions of the law it plainly appears that the end and aim in its enactment is the regulation of the motor vehicle for the public safety and the preservation of the highways of the state for the public welfare. To accomplish this end, registration of all motor vehicles driven upon the public ways is required. Rules for their opera-

tion upon the road have been enacted into law, and compensation is collected for that privilege. Such legislation constitutes means appropriate and clearly adapted to accomplish a legitimate end, and, hence, complies with Marshall's canon of constitutional construction.

The Supreme Court of Ohio, in *Allen* v. *Smith*, 84 Ohio St. 294 (95 N. E. 832, Ann. Cas. 1912C, 611), said:

"Doesn't everybody know that the automobile is a new machine of travel; its use a new use of the highway? * * The automobile is, therefore, a class by itself, the users of such machines a class by themselves, and legislation in recognition of this condition is based upon a solid, easily recognized distinction."

This court said, in *Northwest Auto Co.* v. *Hurlburt, supra,* in referring to the motor vehicle law:

"As a police measure, it was nothing more than fair that the agencies causing and requiring this extra expense should be required to pay for it. Accordingly, we held, in *Briedwell* v. *Henderson, supra,* that the license exacted of persons as a prerequisite to using their motor vehicles on the public highways of the state was a privilege tax within the power of the legislature to require."

Under the Oregon motor vehicle law, the value of the car has nothing to do with the amount of the registration fee exacted. The charge against an aged Ford capable of being driven upon the highways is as great as that upon that popular car fresh from the factory. An old car, of the value of not to exceed four or five hundred dollars, that has deteriorated by years of hard service, is taxed as high as a new car valued at five thousand dollars, if of equal weight. This could not be so if the registration fee

were an *ad valorem* tax assessed against property. The fee is for regulation, including compensation, and is not a tax upon property.

In *Baird* v. *United States*, 187 U. S. 118, 124 (47 L. Ed. 100, 23 Sup. Ct. Rep. 42), it is said:

"There is a presumption against a construction which would render a statute ineffective or inefficient, or which would cause gr̀ve public injury or even inconvenience."

The demurrer was properly sustained.

11. There is another reason why plaintiff must fail. Admittedly there is some money due for the use of the highways of the state. Plaintiff makes no tender of this sum. He who seeks equity must do equity.

This case is affirmed.                           AFFIRMED.