Argued February 28, affirmed May 23, rehearing denied July 18, 1922.

# NORTHWEST AUTO CO. *v.* HURLBURT.

### (207 Pac. 161.)

**Licenses—Automobile License Fee is Privilege Tax Which Legislature may Require.**

1. Since the main purpose of Laws of 1919, page 704, Chapter 399 (Sections 4772–4814, Or. L.), regulating the use, registration, licensing, etc., of motor vehicles, is to require the owners thereof to make good the extra wear and tear on the highways, the license fee therein exacted is a privilege tax within the legislature's power to require, though the sale of a licensed car, carries the privilege with it.

**Taxation—Registered Automobile Dealers not Exempt from Personal Property Tax on Cars in Their Hands.**

2. An automobile dealer, to whom is assigned, under Section 4775, Or. L., on payment of a single fee, a general distinctive registration number for all his cars, which he uses only for demonstration purposes, is in a distinct class from individual owners, as indicated by Sections 4775–4777, 4780, and not within the general mischief of extra wear and tear on the highways without compensation which the statute (Laws 1919, page 704, Chapter 399, Sections 4772–4814, Or. L.), regulating the use, licensing, etc., of motor vehicles was intended to prevent, and hence is not exempt, under Section 4800, from personal property taxes levied under Section 4381; the registration and license fees which the former section provides shall be in lieu of other taxes and licenses referring to those required of individual owners under Sections 4797–4799.

**Taxation—No Discrimination if Classification is Reasonable.**

3. So long as there is reasonable classification, there is no discrimination.

**Taxation—Act Under Which Automobile Dealers' Cars are Subject to Personal Property Tax Held not Discriminatory.**

4. Section 4381, Or. L., under which automobiles in the hands of dealers are subject to personal property taxes, despite the payment of the comparatively small registration fee, required by Section 4775, for issuance of a general distinctive number covering all such cars, is not discriminatory in favor of individual owners, the license fees exacted from whom are, under Section 4800, in lieu of other taxes; it being reasonable to place cars, by the frequent use of

---

1. Validity of excise or license tax on automobiles, see notes in 1 L. R. A. (N. S.) 215; 37 L. R. A. (N. S.) 440; 52 L. R. A. (N. S.) 949; L. R. A. 1915D, 322.

State statute licensing automobiles as precluding imposition of municipal tax or license fee, see note in **Ann. Cas.** 1914D, 483.

which the public highways are injured and deteriorated, in a distinct class from dealers' cars, which are not so used.

**Taxation—Exemptions must Clearly Appear.**

5. Exemptions from taxation must clearly appear in the statute and cannot be implied.

**Taxation—Imposition of Personal Property Tax on Automobiles of Licensed Dealers Held not Double Taxation.**

6. Section 4381, Or. L., under which cars in the hands of dealers are subject to personal property taxes, despite the payment of the registration fee required by Section 4775, is not unconstitutional as constituting double taxation, though the dealer might add the amount paid to the price of the car and sell it within the year to a resident of the state who might register it and pay the required fees within such time.

**Constitutional Law—Taxation—Act Authorizing Summary Collection Before Equalization Held not Unconstitutional.**

7. Section 4381, Or. L., authorizing the summary collection of taxes on unsecured personal property before equalization, is not unconstitutional as depriving the owner of an opportunity to go before the board of equalization; due process of law in tax matters not requiring any judicial procedure.

**Taxation—Act Authorizing Summary Collection Before Equalization Held not Discriminatory.**

8. Section 4381, Or. L., authorizing the summary collection of taxes on unsecured personal property before equalization, is not discriminatory as compelling payment thereof earlier than taxes in general, as the statute does not discriminate between property owners similarly circumstanced.

**Taxation—Act Authorizing Assessor to Summarily Collect Taxes on Unsecured Personal Property Held Reasonable.**

9. The authority given the assessor under Section 4381, Or. L., to cause the summary collection of taxes on unsecured personal property liable to be removed from the county, is reasonable; the fair presumption being that he will do his duty and pursue the same course with respect to all property similarly situated.

From Multnomah: J. P. KAVANAUGH, Judge.

In Banc.

This is a suit brought by the plaintiff to enjoin the sheriff of Multnomah County from selling the plaintiff's automobiles for the personal property tax levied against them for the year 1921. The facts as shown by the complaint are substantially as follows: The plaintiff, a dealer in automobiles, on March 1, 1921, owned a number of automobiles which

it held in Multnomah County for the purpose of sale, exchange and trade.

Prior to that date the plaintiff had procured a dealer's license for the year 1921, pursuant to Section 4 of Chapter 399, Laws of 1919.

Under authority of Section 4381, Or. L. (Olson's Comp.), the county assessor of Multnomah County during March, 1921, assessed plaintiff's said automobiles and levied a tax thereon at the rate of the 1920 tax levy and demanded from plaintiff payment of the resulting tax. Plaintiff refused payment on the ground that the automobiles were taxable only under Chapter 399 of the Laws of 1919 and not under the general laws for the taxation of personal property. Ten days after such refusal the assessor certified this assessment and tax to the sheriff of Multnomah County, with instructions to collect the tax. The sheriff was proceeding to collect the tax until temporarily restrained therefrom in this suit.

A demurrer was interposed by the defendant on the ground that the complaint did not state facts sufficient to constitute a cause of suit. This was sustained by the Circuit Court and a decree was entered dismissing the complaint.

The appeal brings up for construction and interpretation Chapter 399, Laws of 1919, the plaintiff contending that all matters pertaining to the regulation and taxation of automobiles are covered by the act of 1919 alone, while the defendant insists that automobiles may be taxed in some instances under that act alone, and in others may be taxed under the act and the general personal property taxation laws as well, and that the circumstances stated in the complaint warrant a taxation under the general personal property taxation laws. The constitutionality

of Section 4381, Or. L., under which the assessor and sheriff were proceeding in assessing, levying and collecting the tax in question, is also attacked in this controversy.  AFFIRMED.  REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Malarkey, Seabrook & Dibble,* with oral arguments by *Mr. Dan J. Malarkey* and *Mr. E. B. Seabrook.*

For respondent there was a brief over the names of *Mr. Stanley Myers,* District Attorney, and *Mr. George Mowry,* Deputy District Attorney, with an oral argument by *Mr. Mowry.*

McBRIDE, J.—It would be idle to say that the questions presented on this appeal are easy of solution or that any construction which we may give to the sections hereinafter considered will not in individual instances work some hardship.  There never was and perhaps never will be any system of taxation devised that will work even and exact justice in every instance.  The best result that the lawmaker may hope to attain in such an approximation to uniformity as will work out justice in the great majority of cases.  The present litigation illustrates this proposition.

The plaintiff on March 1, 1921, when by operation of law all personal property not otherwise exempt became liable to taxation, was the owner of a large number of automobiles which it kept for sale, and upon which, if not exempt by the provisions of the Motor Vehicle Act, there were taxes due Multnomah County to the amount of $3,002.49.  If these automobiles were exempt from taxation by reason of the

payment of a $30 dealer's license, a large amount of such property held for sale or exchange might practically escape the tax burden imposed by law upon all other personal property; and if unsold during the year or sold to parties residing outside the state, would not contribute anything to the revenues of the state either by license or otherwise. On the other hand, it is urged that the great weight of probability is that most of the vehicles so kept for sale or exchange will have been sold during the year to residents of the state who will necessarily be compelled to secure a license for the privilege of driving them upon the highways of the state which license approximates in amount the personal property tax which would otherwise be due thereon; that in effect this would amount to double taxation; and that as the amount paid by the dealer as personal property tax would naturally be added by him to the price of the car, the burden of this double taxation would eventually fall upon the purchaser. Such and similar difficulties which suggest themselves and which must ensue in consequence of any construction of the law, added to the fact that the statute itself is not entirely free from ambiguity, render its interpretation a matter of much nicety when we attempt to ascertain that elusive thing called "the intent of the legislature."

Those sections of the statute particularly relied upon by the plaintiff are Sections 4775 and 4800, Or. L., and are as follows, the italicized portion of Section 4775 being that particularly pertinent to the present discussion:

"Section 4775. Every owner of a motor vehicle, except as otherwise provided herein shall, after he becomes the owner thereof, and before he operates

or drives the same upon the roads, streets or high-
ways of this state, cause to be filed by mail or other-
wise in the office of the secretary of state, an appli-
cation duly signed by such owner for registration
on a blank or blanks to be furnished by the secre-
tary of state for the purpose, containing (1) the
name, residence and business address of the owner
of such motor vehicle and the name of the county
in which he resides; (2) a brief description of the
motor vehicle to be registered, including the name
of the manufacturer, style, type and engine number
of such motor vehicle, the character of the power and
the number and diameter of the cylinders, and if a
motor truck, the rated maximum load carrying capa-
city expressed in tons and fractions thereof, and the
width of the tires of the wheels expressed in inches;
*provided, that every person, firm, association or cor-
poration manufacturing or dealing in motor vehicles
for the purpose of sale or exchange, instead of regis-
tering each motor vehicle so manufactured or dealt
in, may make an application upon a blank to be fur-
nished by the secretary of state for a general distinc-
tive number for all motor vehicles owned or con-
trolled by such manufacturer or dealer for the
purpose of sale or exchange, such application to con-
tain (a) a brief description of each style or type of
motor vehicle manufactured or dealt in by such
manufacturer or dealer, including the character of
the motor power, and (b) the name and business
address, including the county, of such manufacturer
or dealer. Upon receipt of such application in due
form and the payment of the registration fee of $30,
the secretary of state shall cause the same to be
filed in his office in the manner provided in this act.
There shall thereupon be assigned and issued to such
manufacturer or dealer a general distinctive num-
ber, and delivered to such manufacturer or dealer,
at a place within the state of Oregon, to be desig-
nated by him in his application, a certificate of reg-
istration in such form as the secretary of state shall
prescribe, and one set consisting of two duplicate*

*number plates with a number corresponding to the number of such certificate of registration. Such number plates shall be displayed in the manner provided in this section by every motor vehicle of such manufacturer or dealer when the same is operated or driven upon any road, street or highway of this state; provided that for any registration made on or after July first of any year but one-half of such registration fee shall be paid, and for any registration made on or after October first of any year but one-fourth of such registration fee shall be paid. Such manufacturer or dealer may obtain as many duplicate sets of number plates of such number so assigned to him hereunder as may be desired upon the filing of a formal application therefor with the secretary of state and the payment of $5 for each additional duplicate set. No plate or sign shall be used other than those furnished by the secretary of state. Nothing in this section shall be construed to apply to a motor vehicle operated by a manufacturer or dealer for private use or hire."*

"Section 4800. The registration and license fees imposed by this act upon motor vehicles, motorcycles, motor bicycles, motor trucks, trailers and other road vehicles, shall be in lieu of all other taxes and licenses, except municipal license fees under regulatory ordinances, to which such vehicles may be subject, and such motor vehicles, when so registered and licensed shall not be entered on the county tax rolls for taxation as personal property; provided, that nothing herein shall be considered as relieving such vehicles from liability for the payment of any tax based or levied on an assessment thereof for the year 1919, or any prior year. This shall not be construed to include any such vehicles in process of manufacture or held in storage for commercial purposes, which are not registered and licensed as in this act required."

Section 4814, concluding the enactment, is important as indicating the legislative intent and is as follows:

"The purpose, object and intent of this act is to provide a comprehensive system for the regulation of all motor and other vehicles in this state, except that nothing herein contained shall be deemed to apply to the registration and licensing of United States government owned motor vehicles and to traction engines, farm tractors, road rollers, fire wagons, fire engines, invalid chairs and baby buggies."

Sections 4776 and 4777 are evidently intended to refer only to applications for license to use individual cars to the exclusion of those covered by applications of dealers. They read as follows:

"Section 4776. Upon receipt of an application for registration of a motor vehicle the secretary of state shall file such application in his office and register such motor vehicle and the facts stated in such application in a record book and index to be kept for the purpose under the distinctive number assigned to such motor vehicle by the secretary of state, which record book and index shall be a public record and open to inspection by the public during reasonable office hours.

"Section 4777. Upon the filing of an application for registration under this act and the payment of the license fee herein provided for, the secretary of state shall assign to the motor vehicle a distinctive number and, without expense to the applicant, issue and deliver to the owner two number plates bearing the same number. He shall also issue a certificate of registration of such motor vehicle, which certificate shall include the name of the registrant of the motor vehicle, trade name of the motor vehicle, motor number and license number assigned and also a space for the counter signature of the registrant for identification purposes. The number plates assigned as herein provided shall be and remain with the motor vehicle for the period of registration mentioned in the application therefor; provided, however, that in the event of the loss, mutilation or destruction of a number plate or plates the owner of a registered

vehicle may obtain from the secretary of state a duplicate or duplicates thereof upon filing in the office of the secretary of state on forms prepared by him an affidavit showing the fact and the payment of a fee of $1."

It is significant that the term "license" is only used in these sections in connection with applications for registration of individual cars. So far as the dealer is concerned, the Secretary of State is required to issue a certificate of registration in such form as shall be prescribed and furnish him identification plates; whereas, when an individual owner applies, the Secretary of State is required to give to the particular vehicle registered a distinctive number and deliver to the owner two number plates bearing the same number, which plates by a subsequent section the owner is required under penalty to keep upon his car. The certificate of registration in this instance must contain the trade name of the automobile (as, for example, Ford, Buick, Dodge, etc.), the motor number, etc., of the vehicle registered, in short, everything necessary for the identification of the particular vehicle, a requirement not exacted in the registration of a dealer.

Another important distinction between the license or tax upon a dealer and the license to the owner of an individual car is found in the provision that in a sense attaches the license to the individual car to the vehicle itself, as shown in Section 4780, which provided that "upon the purchase of a motor vehicle registered in accordance with this act the title to the number plates shall vest in the vendee," etc. To say that the title to the plates furnished under the act included the plates furnished the dealer would be absurd. The words "registered in

accordance with this act'' evidently refer to vehicles registered by individual owners. These words furnish a key to the intent of the legislature; and unless a contrary intent is clearly implied these words whenever they appear should be taken to refer to vehicles which are the property of individual owners.

1. The main purpose of the act is well indicated by the preamble, which is as follows:

''Providing for regulating the use, registration, licensing, taxing, identification, conduct and operation of vehicles operated upon the public roads, streets and highways of the state of Oregon; the registration and licensing of persons operating the same; providing for the punishment of violations of this act; prohibiting the unauthorized use or possession of a vehicle; limiting the authority of cities and towns on subjects concerned with said vehicles; providing for the disposition of the funds derived from the operation of said act, repealing all acts or parts of acts in conflict herewith, and declaring an emergency.''

That purpose, in a nutshell, was to require the owners of motor vehicles to make good to the state the extra damage and wear and tear caused by the use of the vehicles upon its highways. The use of motor vehicles upon the roads was comparatively an innovation, having grown to its then proportions in the space of a few years. For such use better and more permanent roads and roadbeds were required than for the comparatively light vehicles theretofore employed. Their weight and swiftness were calculated to work serious injury to the roadbeds prepared for lighter and slower vehicles, and necessitated highways more permanently constructed and more frequent repairs to those already in use.

As a police measure, it was nothing more than fair that the agencies causing and requiring this extra expense should be required to pay for it. Accordingly we held in *Briedwell* v. *Henderson,* 99 Or. 506 (195 Pac. 575), that the license exacted of persons as a prerequisite to using their motor vehicles upon the public highways of the state was a privilege tax within the power of the legislature to require. That this privilege is subject to transfer and sale, or rather that the sale of the car carries with it and vests in the purchaser the right and privilege to use the car upon the public highways, can make no difference in the character of the right.

The courts in speaking of financial exactions of the character herein discussed have sometimes called them licenses, and sometimes privilege taxes. Again, they are sometimes spoken of as license fees or license taxes; but by whatever name they may be called, they partake of the nature of a tax in many respects, and the designation given in the statute is immaterial, the court being interested in the substance rather than in the name. In *Briedwell* v. *Henderson, supra,* we held it to be properly called a privilege tax, the result of this tax being substantially a license, a certificate that the person paying the sum required was permitted to use a particular car upon the highway for the whole or what time might remain of the current year.

2. The dealer in motor vehicles is in a distinct class from the individual owner. Except for the purposes of demonstrating the qualities of his machine he makes no use of the public highways. He is not within the general mischief which it was the intent of the statute to prevent, nor is he personally greatly benefited by the expenditure of the fund

derived from the licensing of individual owners of cars. The $30 fee exacted from him would probably amount to about the average annual license of a single car; and since it is not probable that he would in demonstrating so use the cars on hand for sale as to render them second hand or impair their quality of newness, $30 would doubtless cover the damage which the use of his cars would inflict on the highways. In fact, the dealer has not under this act a single regulated and licensed car, but a roving commission to use any one of many cars for the purposes of demonstration.

A careful study of the whole act satisfies us that the registration and license fees mentioned in Section 4800 have reference to those expressly designated as such in Sections 4797 and 4798, and not to the fee paid by dealers, which is not mentioned or alluded to in either of the two last-mentioned sections. At the risk of taking more space than is absolutely necessary and of repeating what has already been quoted, we give the three preceding sections entire as they stand in the statute, so that their logical relation to the exemption section may appear:

"§ 4797. Registration or License Fees for Motor Vehicles. The following annual license fees shall be paid to the secretary of state upon the registration or re-registration of a motor vehicle in accordance with the provisions of this act; provided, that for any registration made on or after July 1st of any year, but one-half of said fees shall be paid; and for any registration made on or after October 1st of any year, but one-fourth of said fees shall be paid:

| | |
|---|---|
| Motor bicycles | $ 3.00 |
| Motorcycles | 6.00 |
| Electric pleasure vehicles | 18.00 |
| Electric service vehicles under 1 ton capacity | 25.00 |

All steam, gasoline and hydrocarbon operated vehicles (except motor trucks having a rated maximum load carrying capacity of 1 ton and over), up to and including 23 h. p. ................................ 15.00
In excess of 23 h. p. and inclusive of 26 h. p... 22.00
In excess of 26 h. p. and inclusive of 30 h. p... 28.00
In excess of 30 h. p. and inclusive of 36 h. p... 36.00
In excess of 36 h. p. and inclusive of 40 h. p... 48.00
In excess of 40 h. p........................ 56.00

"All horse-power ratings herein specified for the purpose of determining the registration fees herein enumerated shall be based upon Haskell's horse-power formula for steam vehicles and upon the formula of the Associated Licensed Automobile Manufacturers for gasoline vehicles. And in case of doubt, where the secretary of state is unable from either of said formulas to determine the actual rated horse-power of any such motor vehicles, it shall take the rate of the next class of motor vehicle to which its horse-power approximates, that it may pay a fair and uniform registration fee of all such other vehicles upon its horse-power."

"§ 4798. Registration or License Fees for Motor Trucks and Trailers. The annual license fees in the schedule following shall be paid to the secretary of state upon the registration or re-registration of all motor trucks and trailers as defined in this act, except such motor trucks having a carrying capacity of less than one ton; provided, that for motor trucks and trailers registered on or after July 1st of any year, only one-half of said fees shall be paid; and for motor trucks and trailers registered on or after October 1st of any year, only one-fourth of said fees shall be paid:

One ton and not over 1½ tons..............$ 32.00
Over 1½ tons and not over 2 tons.......... 48.00
Over 2 tons and not over 2½ tons.......... 60.00
Over 2½ tons and not over 3 tons.......... 72.00
Over 3 tons and not over 3½ tons.......... 84.00

Over 3½ tons and not over 4 tons.......... 96.00
Over 4 tons and not over 4½ tons.......... 108.00
Over 4½ tons and not over 5 tons.......... 120.00

"On all trailers as defined in this act an annual license fee equal to one half of the license fee charged for motor trucks of like rated carrying capacity shall be paid to the secretary of state at the same time and in the same manner as herein provided for motor trucks; provided, trailers of less than one ton rated carrying capacity shall be exempt from the payment of the license fee herein provided."

"§ 4799.  Weight of Motor Trucks—How Determined.  The manufacturer's rated maximum load carrying capacity shall be the basis on which the above registration and license fee upon trucks and trailers shall be determined and charged; provided, that in no case shall the rated load carrying capacity be determined to be in excess of six hundred pounds per inch of tire width of wheels.  When the manufacturer's load carrying capacity is not obtainable it shall be estimated on the basis of six hundred pounds per inch width of tire."

Thereafter follows the exemption section, which would seem clearly to refer to the sections quoted above and to be limited in its application to those sections.

3, 4. So long as there is reasonable classification there is no discrimination, and it appears entirely reasonable to place cars used upon the public highways and accommodated by them, as injured and deteriorated by such use, in a distinct class from those cars not so used, and that is what the legislature attempted here.

5. It is a well-known rule that exemptions from taxation must clearly appear in the statute and cannot be implied: 26 R. C. L., § 266, p. 302; *Wallace* v. *Board of Equalization,* 47 Or. 584 (86 Pac. 365).

6. It is plausibly contended that the position of a personal property tax upon automobiles kept for sale will constitute double taxation, but this does not necessarily follow. So to hold as a matter of law, we should have to assume (1) that the dealer would add the amount paid for taxes to the price of the car when sold; (2) that he would sell it within the year; (3) that he would sell it to a resident of this state; and (4) that such resident would have it registered and would pay the required fees within the year. The county of Multnomah is not required to gamble upon these probabilities or possibilities.

7. It is also urged that Section 4381, Or. L., authorizing the summary collection of taxes upon unsecured personal property before equalization and upon certificate of the assessor, is unconstitutional and void. This is not an uncommon statute and we are cited to no case in which it has been held unconstitutional. On the contrary, such a statute has been held constitutional by the Supreme Court of our sister state of California in the case of *Rode* v. *Siebe*, 119 Cal. 518 (51 Pac. 869, 39 L. R. A. 342).

8. The fact that the plaintiff was deprived of an opportunity to go before the board of equalization can have no importance here, in the sense of his being deprived of a hearing before some judicial or *quasi*-judicial body, for the reason that "due process of law" in tax matters does not require regular or indeed any judicial procedure: Judson on Taxation, § 340. In fact, counsel for plaintiff hardly put their argument upon that ground, but rather upon the theory that the statute is discriminatory in that it compels plaintiff to pay its taxes several months earlier than the general run of taxpayers are required to pay theirs. The argument is un-

sound in this, that the statute does not discriminate between plaintiff and other property owners similarly circumstanced.

9. The authority given the assessor to cause the summary collection of taxes upon personal property liable to be removed from the county is reasonable, if the county is to have any assurance that its taxes are to be collected. The fair presumption is, that the assessor will do his duty and pursue the same course with respect to all property similarly situated. If his action is arbitrary and unwarranted by the facts, the plaintiff perhaps has his remedy by injunction, but such is not the case made here, where one of the points suggested in the argument of counsel is that the cars in question will probably soon be sold and in private ownership.

After a careful examination of the authorities cited we are of the opinion that the demurrer was properly sustained, and the decree of the Circuit Court is therefore affirmed.

Mr. Justice BROWN took no part in the hearing or decision of this case.

AFFIRMED.   REHEARING DENIED.