13 P.(2d) 1093

ODEN BUICK, Inc., et al. v. ROEHL et al.

No. 3755.

Supreme Court of New Mexico.

Aug. 19, 1932.

Rehearing Denied Sept. 15, 1932.

J. D. Mell, of Santa Fé, and M. J. McGuinness, of Albuquerque, for appellants.

W. A. Keleher, of Albuquerque, for appellees.

SADLER, J.

The appellees, certain automobile dealers of Bernalillo county, N. M., instituted this suit in the district court of that county against the appellants Steve Roehl, as county assessor, the board of county commissioners of said county, and the New Mexico state tax commission, seeking to restrain them from placing on the county tax rolls for the year 1931 the average number of new and secondhand automobiles held in stock by appellees during the year 1930, for which indi-

vidual 1931 automobile license plates had not been purchased.

The court, upon the filing of the complaint, issued its order to show cause against appellants. The county assessor and the board of county commissioners filed a joint return thereto, so designated, while the state tax commission filed its separate answer to the complaint and order to show cause. The return was in the nature of a demurrer, and the court, in its disposition of the cause, treated both it and the separate answer as demurrers. So treating the appellants' pleadings, the trial court overruled them as demurrers. The appellants declining to plead further, the court entered its order granting the injunction as prayed for. This appeal is prosecuted by appellants from the order so made.

The essential controversy between the parties revolves about the proper construction to be given sections 11-319, 11-328, 11-330 to 11-332, both inclusive, Comp. 1929, interpreted in the light of the duties of the county assessor under section 141-234, Comp. 1929, relating to the assessment for taxation purposes of stocks of merchandise.

The material provisions of section 141-234 read as follows: "The assessor shall ascertain the average value of stocks of merchandise for the year ending on the thirty-first day of December prior to the date of the assessment thereof, and such value shall be the value at which such merchandise shall be assessed."

Paragraph (a) of section 11-319 provides: "A manufacturer of or dealer in motor vehicles, trailers or semi-trailers, owning or operating any such vehicle upon any highway for purposes of demonstration, only, and not for private use or hire, in lieu of registering each such vehicle may obtain from the department upon application therefor upon the proper official form and payment of the fees required by law and attach to each such vehicle one or duplicate number plates, as required for different classes of vehicles by section 30 (11-330), which plate or set of plates shall each bear thereon a distinctive number, also the name of this state, which may be abbreviated, and the year for which issued, together with the word 'dealer' or a distinguishing symbol indicating that such plate or plates are issued to a manufacturer or dealer, and any such plates so issued may, during the calendar year for which issued, be transferred from one such vehicle to another owned or operated by such manufacturer or dealer who shall keep a written record of the vehicles upon which such dealers' number plates are used and the time during which each set of plates is used on a particular vehicle, which record shall be open to inspection by any police officer or any officer or employee of the department."

Section 11-328, fixing the registration fees on automobiles, so far as here material reads as follows: "When the same has not been registered in any state during at least three years prior to the year for which the vehicle is being registered: $18.00 plus $2.00 for each one hundred pounds or fraction thereof,

weight of such vehicle in excess of 2400 pounds."

Section 11-330 provides:

"A dealer in motor vehicles may, in lieu of registering each vehicle he may wish to demonstrate on any highway, apply for and secure a dealer's demonstration number, which he may use by attaching registration and number plates issued by the department to each vehicle so used for demonstration only, and not for hire or private use.

"The annual registration fee to be paid by such dealer shall be $50.00, which shall entitle him to one pair of plates and he shall be required to pay $10.00 for each pair of extra plates he may use. (L. '29, Ch. 119, § 30.)"

Section 11-331 directs the disposition of fees collected under the provisions of the Motor Vehicle Act of which said section is a part, being chapter 119, § 31, Laws of 1929, as follows: 6 per cent. to defray expenses of administration of the act; the remainder to be distributed as follows: 37 per cent. to the state road fund; 17 per cent. to the county road fund; 21 per cent. state general fund; 25 per cent. county and school district funds.

Section 11-332 is the particular portion of the act upon which the appellees rely in support of their contention that automobiles held in stock for sale by any dealer who has purchased "dealer's demonstration number" (the so-called dealer's license) are not otherwise subject to a personal property tax. This section reads as follows: "No vehicle upon which the registration fees herein provided to be paid shall be assessed or taxed upon any property assessment rolls in this state for the period for which such fees are paid. (L. '29, Ch. 119, § 32.)"

It should be mentioned that sections 11-328 and 11-331, Comp. 1929, have been amended by chapter 77, §§ 5, 6, N. M. Session Laws of 1931, effective only as to registrations for 1932 and subsequent years. The changes wrought by the amendments are hence not material to the decision of this case.

It is the contention of appellees that by procuring the dealer's demonstration number authorized by sections 11-319 and 11-330, and paying the fee prescribed by the last-mentioned section, they are brought within the provisions of section 11-332, relieving from separate assessment or taxation upon any property assessment rolls in this state for the period for which such fees are paid, any vehicle upon which the registration fees provided in the act have been paid. With this contention we are unable to agree.

It is, to say the least, an open question in this jurisdiction whether the Legislature has power to create tax exemptions, or to recognize any property as exempt, save as created or expressly authorized in the Constitution. Heretofore, we have not been and are not now called upon to determine the question. The appellees, in arguing that this is not an exemption statute, directly assert that the Legislature is without such power; hence, it could not in this act have been attempting what it lacked the power to do. Recognizing the limitation, thus conceded, they point the conclusion, as evidenced by the apportion-

ment of auto registration fees made in section 11-331, that this is both a license fee and an ad valorem tax. Thus, they argue, it creates no exemption, for the motor vehicles are taxed and the tax covered in the total registration fee charged.

This argument is plausible and sound when applied to individual registration, but illogical and fallacious when related to dealer registration. For how can the dealer point to any particular vehicle upon which he has paid the tax? Section 11-332, upon which reliance is placed as relieving this property from assessment upon the property assessment rolls, by its language only purports to relieve any vehicle upon which the registration fees provided by the act have been paid. The so-called dealer's license, referred to as "dealer's demonstration number" in the act, is not appurtenant to any particular automobile. In a given day, week, or month, it may lawfully be used upon every car held in stock by the dealer.

In fact, the fee collected from dealers, spoken of in this section as an "annual registration fee" is nothing more nor less than a privilege tax collected annually for the liberty of demonstrating their cars upon the public highways. The fact that the Legislature makes no different apportionment of it from that made of fees collected on individually registered cars, does not destroy its essential character as such. The incidental augmentation of the public treasury from automobile registration fees does not alone have the effect of characterizing the exaction as a tax. Berry on Automobiles (4th Ed.) § 107; Cleary v. Johnston, 79 N. J. Law, 49, 74 A. 538, cited with approval in State v. Ingalls, 18 N. M. 211, 135 P. 1177. In its very nature it does not represent payment of the registration on any particular car, but rather the sum exacted for the privilege of taking *any* car onto the public highways of the state for demonstration purposes under the number assigned.

As said by the Supreme Court of Oregon, in Northwest Auto Co. v. Hurlburt, 104 Or. 398, 207 P. 161, 164, touching upon the nature of the dealer's license: "In fact, the dealer has not under this act a single regulated and licensed car, but a roving commission to use any one of many cars for the purposes of demonstration."

All property both real and personal owned by any person, firm, or corporation is subject to assessment and taxation in the county where it is situated the 1st day of January of each year. Section 141-201, Comp. 1929. It is the duty of the county assessor to ascertain "from the lists of property made and returned by property owners and by *diligent inquiries and examinations*" all real and personal property subject to taxation; to place the same on the rolls, and to list and assess the same to the persons owning, claiming, or having the same in their possession, charge, or control. Sections 141-218, 141-233, Comp. 1929. Stocks of merchandise are to be assessed for any given year at the average, value of such stocks for the year ending December 31st, immediately prior to such assessment. Section 141-234.

It is plain from the facts of this case as disclosed by the pleadings that appellees, misapprehending the meaning of the language of section 11-332, failed to make a return for 1931, on new and secondhand cars, based on the average value of the stock carried in 1930. The assessor was about to supply this omission when his hand was stayed by the injunction sued out by appellees. We think the taxing officials are right in the view they take of the statute and that the injunction was improvidently issued.

The automobile industry has enjoyed an extraordinary growth within the past two decades and, while just now suffering from the ailments incident to the financial depression existent in the country at large, this industry is not the only sufferer. We know of none that has escaped. It is a well-known fact that automobile dealers carry in stock in this state throughout the year merchandise in the form of cars and trucks reaching a very large sum in total aggregate value.

Some doubt, as indicated, would exist as to the power of the Legislature to exempt this large body of taxable property or its value from taxation. If treated as such an effort, and we do not so consider it, the act would be subject to the long-established rule that tax exemption statutes must be strictly construed and the right to the exemption claimed established beyond peradventure of doubt. If not so considered, it is hardly to be presumed that the small sums received for the so-called dealer's license, insignificant in comparison with the amounts collectable as an ad valorem tax upon properly assessed valuations, was ever intended by the Legislature to constitute or embrace the regular property tax on cars carried in stock by dealers.

Aside from the vital fact pointed out that section 11-332 only purports to exempt from separate assessment for property tax any vehicle upon which the registration fee provided has been paid, other potent circumstances stand out in the act suggestive of legislative intent. One such is that, under our peculiar method of assessing stocks of merchandise pursuant to section 141-234, Comp. 1929, distinct items of such stock are not assessed or returned for taxation at all, but only the average value of the conglomerate mass of merchandise carried in stock for the preceding year. Section 11-332, Comp. 1929 (section 32, ch. 119, Laws 1929), by its terms is made to apply only to those vehicles which, according to the custom, practice, and law theretofore and then obtaining, were placed upon the property assessment rolls as distinct physical objects of taxation. Such was the case as to automobiles under individual ownership but not as to dealers' stock cars. It was the average value of that stock—an intangible thing —instead of the cars themselves as described and identified property—something tangible —which, under the law and practice prevailing, was assessable to the dealer. We must impute to the Legislature familiarity with this distinction in the method of assessing the car of an individual owner and the dealers' stock cars. So doing, its use of language confining operation of the act relieving

against separate assessment to a vehicle upon which the registration fee has been paid assumes added significance.

It also appears that, when the Legislature by the act in question decided as a matter of policy to embrace the property tax on an individually owned motor vehicle in the total registration fee charged, and make such fee in lieu of all other property taxes on same, it greatly increased the amount of the fee. The large increase presumably takes the place of the property tax formerly paid separately on such automobile. Indeed, appellees so assert and point to it as proof that the property tax is included in the registration fee paid. This is true enough as to individual registration. But what about dealer registration? What increase in the amount of the dealer's fee supplies the ad valorem tax formerly paid separately? Significantly, no increase was made in the dealer's fee. It was fixed at $50 for the first set of plates and $10 for each additional set by chapter 96, Laws of 1923, and so it remained under the new act, chapter 119, Laws of 1929. Concededly, it was a pure privilege tax, or privilege tax and license fee combined, as enacted. No increase in its amount can be pointed to as supplying the property tax now claimed to be embraced within it, as can be done in the case of the fee for individual registration.

Still another aid to true legislative intent is to be found in the act. Paragraph (k) of section 28, chapter 119, Laws of 1929 (section 11-328, par. k, Comp. 1929), authorizes those entitled to the soldiers' exemption of $2,000 to employ same to a specified extent in paying the registration fees exacted under the provisions of said section. Thus by confining the right to use this exemption to the fees imposed by said section (fees for individual registration), the Legislature excluded the dealer whose fees are imposed by another section. The dealer, though he may be entitled to the soldiers' exemption, cannot apply same to any extent whatever in paying the fees exacted of him in his capacity as a dealer. Why should the Legislature permit use of the exemption to the extent specified against individual registration and deny its use against dealer registration? Plausibly, it may be attributed to a conception on the part of the Legislature that individual registration embraces a property tax and that dealer registration does not.

But little aid is to be had from adjudicated cases in the proper construction to be given this statute. Indeed, so far as our research discloses, only four cases have dealt with somewhat similar statutes. Those cases are: Kootenai County v. Seven-Seven Co., 32 Idaho, 301, 182 P. 529, 530; Northwest Auto Co. v. Hurlburt, 104 Or. 398, 207 P. 161; Covey Motor Car Co. v. Hurlburt, 104 Or. 414, 207 P. 166; Stevens v. Hurlburt, 104 Or. 233, 207 P. 167.

The Idaho case, Kootenai County v. Seven-Seven Co., supra, is of little value, since there the statute corresponding to our section 11-332, reads:

"The registration fees imposed by this chapter upon motor vehicles *other than the*

*registration fees required of dealers and manufacturers* [italics ours], shall be in lieu of all taxes thereon, general or local," etc.

The Legislature in Idaho thus made it very plain that the lieu provision should not be construed as applying to automobiles carried in stock by dealers for which only dealer, as distinguished from individual, registration was had. Hence, in the particular case, the dealer was required to pay the personal property tax on thirty automobiles carried in stock.

Northwest Auto Co. v. Hurlburt, supra, decided by the Supreme Court of Oregon, approaches more nearly the case at bar from the standpoint of similarity in the language of the two statutes. In this case the assessor of Multnomah county assessed as personal property the dealer's automobiles held for sale, exchange, and trade and levied a tax thereon. It appeared that the dealer had procured a dealer's license for the year 1921, the same year for which the personal property tax was levied. It was sought by injunction to prevent the sheriff selling the automobiles to satisfy the tax.

The Motor Vehicle Act under which the dealer's license was paid contained provisions very similar to the New Mexico act. Individual and dealer registration were provided for, and further that: "The registration and license fees imposed by this act upon motor vehicles * * * shall be in lieu of all other taxes and licenses, * * * and such motor vehicles, when so registered and licensed shall not be entered on the county tax rolls * * * as personal property."

There, as here, the dealer contended that, by virtue of procuring a dealer's license, his stock of automobiles was relieved from assessment and taxation under the general laws relating to the assessment and taxation of personal property. The Supreme Court of Oregon declined to adopt this view, and held that a demurrer interposed to the complaint for injunction, fairly presenting the dealer's position, was properly sustained by the trial court.

Meeting the contention that to sustain the personal property tax levied would, in view of the payment of a dealer's license, constitute double taxation, the court said: "It is plausibly contended that the [im]position of a personal property tax upon automobiles kept for sale will constitute double taxation, but this does not necessarily follow. So to hold as a matter of law, we should have to assume (1) that the dealer would add the amount paid for taxes to the price of the car when sold; (2) that he would sell it within the year; (3) that he would sell it to a resident of this state; and (4) that such resident would have it registered and would pay the required fees within the year. The county of Multnomah is not required to gamble upon these probabilities or possibilities."

In the case at bar it is also urged that to subject this property to a personal property tax will constitute double taxation. The only theory on which such could be true under the case here presented is that, in the payment of the fee demanded for a dealer's demonstration number, the dealer thereby pays the property tax on the entire stock of new

and secondhand cars carried by him for the year in question. We have already held that, under the express language of the act, such is not the case.

It is to be remembered also that the claim of injustice is here made by the dealers. Usually only the one injured is entitled to complain. Cooley on Taxation (4th Ed.) § 227. If it were true in fact, as we believe it is not under the peculiar method employed for assessing merchandise, that the same automobile paid two property taxes in one year, it operates as no injustice to the dealer since he pays only one of them. On the other hand, merchants generally, we apprehend, might have some just cause for complaint, that another member of their class is for all practical purposes relieved of the payment of a tax imposed upon all other members of the same class.

Mention should perhaps be made of one allegation appearing in the complaint, admitted by the demurrer, before leaving this branch of the case. The allegation appears in paragraph 4 and reads: "That the said defendant has also assessed and threatens to place on the tax rolls of Bernalillo County for taxation for the year 1931, the average number of second hand automobiles held by these plaintiffs for sale during the year 1930, on which licenses were not bought for the year 1930."

The payment of individual registration fees for 1930 on either new or secondhand cars does not relieve against separate assessment for property tax in 1931. It is the payment of such fees for 1931 which has this effect. Nor will the nonpayment of individual registration fees for 1930 subject to separate assessment for 1931, motor vehicles upon which individual registration is taken out for the latter year. Possibly in practice no confusion will exist for no argument is based upon this undenied allegation. But portending confusion, as it does, we have deemed best to take this notice of the matter.

In urging an additional ground for the injunctive relief sought, appellees concede for purposes of argument the correctness of appellants' construction of the statute. They charge, however, upon information and belief, that the automobile dealers in Bernalillo county are the only dealers in the state who are thus assessed for the year 1931, and they further allege: "That in and about the levying of such assessments for taxation, the defendant, Steve Roehl, County Assessor of said County, and the defendant, the State Tax Commission, have discriminated against the automobile dealers of Bernalillo County, New Mexico, and specifically these plaintiffs, and conspired against them to compel them to stand attacks for other dealers similarly situated throughout the State of New Mexico in counties outside of Bernalillo County from being taxed by the respective assessors in said counties."

The county assessor and board of county commissioners in their return plead the immateriality of these allegations. The state tax commission in its answer upon information and belief denies such allegations. Since

the trial court treated both pleadings as demurrers and overruled them, the denial thus interposed would probably necessitate a remand for the taking of further proof, if it should be determined that the facts pleaded, if true, warrant the injunction granted. It is clear from the trial court's opinion, however, that such is not the theory upon which it awarded the injunction. Instead, it adopted appellees' view that stock automobiles for which dealers' demonstration numbers have been purchased are not subject to separate assessment and taxation.

The appellees cite and rely upon the cases of Ute Creek Ranch Co. v. McBride, 20 N. M. 377, 150 P. 52 and First National Bank v. McBride, 20 N. M. 381, 149 P. 353, 359, in support of their position on this claim to injunctive relief. The situations are not identical. There the remedy by injunction was invoked against the county treasurer to restrain the collection of alleged illegal taxes, while here the remedy is sought to prevent an alleged illegal assessment of certain property. A distinction lies between the right to enjoin the assessment of property for taxation, and the collection of a tax upon it after assessment. Ordinarily the right to the relief is confined within narrower limits in the former case. Cooley on Taxation (4th Ed.) § 1659. But conceding the power to enjoin in a proper case, still we think the complaint before us lacks allegations essential to the relief sought within the holding in First National Bank v. McBride, supra.

As pointed out in the opinion in that case: "It is a general and well-recognized proposition that no taxpayer may appeal to a court of equity for relief against discriminatory taxation unless he has no legal or statutory remedy which is adequate, or unless he has first exhausted his legal or statutory remedy without avail. 2 Cooley on Taxation (3d Ed.) 1412; 2 Desty on Taxation, 661, 662."

We also called attention to sections 4048 and 2636, C. L. 1897, regulating appeals to the county and territorial boards of equalization by dissatisfied taxpayers (from which sections the present controlling statutory provisions differ in no respect material to this discussion), and said: "Under these two sections, it is perfectly apparent that any taxpayer who believes that he is being discriminated against may appeal to the board of county commissioners as the board of equalization, and, if he knows of any omitted property, as, it is presumed, plaintiffs in this case knew, to request said board to list the omitted property for taxation."

Commenting upon the importance of both allegation and proof that the taxpayer has himself endeavored before the equalization boards provided for such purpose, to correct the injustices of which he complains, we said:

"The complaint contains no allegation that they requested the assessor to perform any of these acts, or that they appeared before either the county or state board of equalization, *and requested that the omitted property be listed and taxed,* and that the undervalued property be raised to a value proportionate to that of the complainants. * * *

"It does not appear, however, that the plaintiffs ever demanded of the assessor, or of the county commissioners, *that the omitted property be listed for taxation,* and that all be raised to 50 per cent. of its value, thus equalizing the burdens of taxation upon all, nor does it appear that the collector of the county, after the tax lists had been delivered to him, *was ever requested by the plaintiffs to list any of the omitted property* as he was authorized to do under section 4056, C. L. 1897. It thus appears that there was total lack of effort on the part of the plaintiffs to secure equalization by the means provided by the statute, except in one particular, viz., they attempted to have the valuations of their property reduced from 50 to 35 per cent. of its value, and succeeded in their effort in that behalf before the county commissioners; but they made no effort either before the assessor or before the county commissioners, or before the collector, *to have the omitted property listed,* or to have all of the property in the county valued the same as their own."

The complaint in the case at bar contains no allegation that appellees made any request either upon the assessor, the treasurer, the board of county commissioners, or the state tax commission that the automobiles carried in stock by other dealers in Bernalillo county or throughout the state, not covered by individual registration, be placed on the rolls. Indeed, the very point of their attack is, and was, that they should not go on the rolls; and the injunction sought was to restrain the taxing officials from placing and retaining them there. While, as a predicate to the right to come into equity, they do allege that they have appealed to the board of county commissioners and state tax commission and have been "denied relief," it is obvious that the "relief denied" was in keeping their stock cars on the rolls, and not in failing to list others as omitted property.

The allegations of the complaint strongly support the inference that the action of the assessor in listing this property was employed by him and state tax commission for the purpose of testing the right so to do. The sole charge of conspiracy made by appellees is based on the allegation that these officials "have conspired against them to compel them to stand attacks for other dealers similarly situated throughout the State of New Mexico in counties outside of Bernalillo County from being taxed by the respective assessors in said counties."

If the desire to test their rights in the premises be accepted as the explanation of the listing of this property by the appellants, it cannot be assumed that, having been sustained in their contention, they will fail to secure the performance by the assessors and treasurers throughout the state of their respective duties under section 141-233, Comp. 1929, with reference to the listing and assessment of omitted property. Rather the presumption lies that these officials will perform their duties and that the inequalities complained of will thus be removed.

It follows that the decree of the lower

court awarding the injunction prayed for is erroneous. It will be reversed, and the cause remanded for further proceedings consistent with the views herein expressed. It is so ordered.

BICKLEY, C. J., and WATSON and HUDSPETH, JJ., concur.