**ANTHONY et al. v. KOZER, Secretary of State of Oregon.**

(District Court, D. Oregon. January 18, 1926.)

No. 8784.

1. **Licenses** ⬦7(1)—**License tax on dealers selling fuel for motor vehicles held an excise tax imposed on dealer, and not "toll," so as to be prohibited by federal law on highways constructed thereunder (Laws Or. 1919, pp. 219, 704; Laws Or. 1921, p. 807; Laws Or. 1923, p. 402; Act Cong. July 11, 1916 [Comp. St. §§ 7477a–7477i], amended by Act Feb. 28, 1919 [Comp. St. Ann. Supp. 1919, § 7477bb et seq.]; Highway Act U. S. Nov. 9, 1921 [Comp. St. Ann. Supp. 1923, §§ 7477¼–7477¼y]).**

License tax imposed on dealers for sale of fuel for motor vehicles under Laws Or. 1919, pp. 219, 704, Laws Or. 1921, p. 807, and Laws

11 F.(2d)—41

Or. 1923, p. 402, *held* a license or excise tax on dealer, and not a "toll" against driver of motor vehicle for privilege of operating on highways, such as would make it unconstitutional under Act Cong. July 11, 1916 (Comp. St. §§ 7477a–7477i), amended by Act Feb. 28, 1919 (Comp. St. Ann. Supp. 1919, § 7477bb et seq.), and Highway Act U. S. Nov. 9, 1921 (Comp. St. Ann. Supp. 1923, §§ 7477¼–7477¼y), requiring roads constructed under its provisions to be free from tolls, which provisions had been assented to by State of Oregon.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Toll.]

2. **Licenses** ⬦7(1)—**"Toll" is sum exacted for use of common passage, or duty imposed on goods and passengers traveling public roads and bridges.**

"Toll" is a settled, certain, and defined sum exacted for use of common passage, or duty imposed on goods and passengers traveling public roads and bridges.

At Law. Action by L. Anthony and others against Sam A. Kozer, Secretary of State of Oregon. On motion to dismiss the complaint. Motion sustained.

W. R. Crawford, of Seattle, Wash., for plaintiffs.

I. H. Van Winkle, Atty. Gen., for Oregon, and J. M. Devers and Willis S. Moore, Asst. Attys. Gen., for defendant.

WOLVERTON, District Judge. The plaintiffs herein, of whom there are a number, are owners and operators of motor vehicles within the state of Oregon, and are users of the public highways within the state, including the rural post roads. The defendant is secretary of state of the state of Oregon, and is authorized and required to receive from dealers in motor vehicles fuel statements of account for the sale of such fuel to users, and to collect from them the license tax provided by law to be paid by them, upon the amount of sales made thereof.

It is charged that the license tax provided for by the state statutes is illegal, unconstitutional, and inoperative, and therefore not enforceable, and that defendant has collected a large amount of such taxes, approximating $6,000,000, illegally and without authority of law; the contention being that the license tax imposed upon dealers by the state law is in legal effect a toll exacted from users for the privilege of operating automobiles upon the rural post roads of the state, which is inhibited by the Rural Post Roads and Highway Acts of Congress.

The prayer is for a disclosure and discovery on the part of the secretary of state respecting the taxes collected by him, and for

judgment against him for the amount of such taxes so collected, and further for a decree enjoining him from further collection of any and all such taxes. The sufficiency of the complaint is challenged by motion to dismiss.

The laws and regulations of Congress relative to rural post roads are comprised in the Act of Congress of July 11, 1916 (chapter 241, 39 Stat. 355 [Comp. St. §§ 7477a— 7477i]), as amended February 28, 1919 (chapter 69, 40 Stat. 1189, 1200 [Comp. St. Ann. Supp. 1919, § 7477bb et seq.]), and the federal Highway Act of November 9, 1921 (chapter 119, 42 Stat. 212 [Comp. St. Ann. Supp. 1923, §§ 7477¼–7477¼y]).

The Rural Post Roads Act authorizes the Secretary of Agriculture to co-operate with the states through their respective highway departments in the construction of rural post roads, but it declares that no money appropriated under the act shall be expended within a state until its Legislature shall have assented to the provisions thereof; it being provided that the Secretary of Agriculture and the state highway department shall agree upon the roads to be constructed and the character and method of construction, and further "that all roads constructed under the provisions of this act shall be free from tolls of all kinds." Comp. St. § 7477a. This latter provision is, in effect, also incorporated in the Highway Act of November 9, 1921. See section 9 thereof (Comp. St. Ann. Supp. 1923, § 7477¼h).

It is sufficient to say that the Legislative Assembly of the state has regularly and legally assented to the requirements of these acts of Congress. By certain acts of the Legislative Assembly of the state of Oregon, namely, as set forth by chapter 159, General Laws of Oregon 1919, chapter 412, General Laws of 1921, and chapter 274, General Laws of 1923, in their ultimate repose (see section 2 as amended by the last statute), it is declared that each and every dealer, being a person, firm, or corporation, who imports or causes to be imported gasoline, distillate, benzine, naphtha, liberty fuel, and such other volatile and inflammable liquids produced or compounded for operating or propelling motor vehicles, for use, distribution or sale in, and after the same reaches, the state, or who produces, refines, or compounds such fuel within the state for use, distribution or sale therein, who is now engaged or may hereafter engage in the sale or distribution as dealers and distributors of motor vehicle fuel, is required to pay a "license tax" of 2 cents per gallon on all motor vehicle fuel sold or distributed; this license tax to be paid to the secretary of state, who is required to turn it over to the state treasurer. The treasurer in turn is required to place the same to the credit of the general fund, and at the end of each calendar month to transfer the receipts, except $5,000 reserved for paying designated claims, to the state highway fund. It is further declared that the act and the tax thereby levied shall not be deemed to be construed to apply to any motor vehicle fuel sold or distributed in original packages or containers exempt from taxation under the Constitution and laws of the United States relating to interstate commerce.

Plaintiffs assail the legality of this "license tax" on the hypothesis that it is, in effect, a toll exacted by the state of persons who use and are entitled to use the highways and rural post roads of the state for operation of their motor vehicles thereon, contrary to the interdiction of the acts of Congress. Defendant's theory is that the "license tax" is an excise levied upon the dealers for the privilege of engaging in the business of selling and distributing motor fuel to the owners and operators of motor vehicles, and is not, in legal sense, a toll imposed for the use of or privilege of using the rural post roads of the state.

The Supreme Court of the state has heretofore, in the case of Portland v. Kozer et al., 217 P. 833, 108 Or. 375, in a measure passed upon the question involved here. This was a suit by the city of Portland to enjoin Kozer, the secretary of state, from exacting the payment of the license tax from the city of Portland, it being a municipal corporation and an arm of the state sovereignty, and therefore, it was contended, exempt from the payment of such tax, or, in other words, privileged to buy its motor fuel from the dealers without being burdened with the license tax imposed upon them. The court was of the opinion that the statute in question did not provide for levying the tax upon the municipalities of the state, but against the seller or dealer prior to purchase of gasoline by the city, and therefore refused to relieve the city from the payment of such tax. There the city claimed exemption from payment of the tax because a part of the state itself. Here plaintiffs claim that they are not required to pay the tax because it is, in effect, a toll exacted from them for use of the rural post roads of the state. While there is a difference as to the form of legal inquiry, the character of the tax under consideration here was involved and discussed, and the decision of the controversy was made to impend thereon. I give here at some length the reasoning of the court touching the subject:

"It is no doubt true that the amount of the tax usually finally falls upon the purchaser because the seller will naturally fix the price to be collected for the commodities sold which will include the amount of the tax: See Clark v. Titusville, 22 S. Ct. 382, 184 U. S. 329, 333, 46 L. Ed. 569. See, also, Rose's U. S. Notes. It may also be said that what is ultimately gained by the purchaser for the amount of the tax so included in the price is the use of the highways for automotive vehicles propelled by motor vehicle fuels. There are also some of the essential elements of the tax upon the sale, or the privilege of the sale of motor fuels. The dealer, however, is required to pay the tax. * * * The tax is not imposed upon the purchaser directly. He is not required to do anything by the act although the result may incidentally cause the price of the motor vehicle fuels to be enhanced. Pierce Oil Corp. v. Hopkins [C. C. A.] 282 F. 253. In the latter case the court said: 'The conclusion that the tax is not levied against the purchaser disposes of the basis of the only contention made by appellant of a violation of the Fourteenth Amendment; but it may be added that the conclusion that the tax is an excise tax on the privilege of making sales of the named products, although measured by the gallon sold for designated use, brings the act within the proper exercise of the state's power of taxation, when the commerce clause is not involved.' "

The result of the decision was that the tax was against the dealer, and that the municipality was not exempt from paying the dealer's charges for motor vehicle fuel, although the price might have been so adjusted as to include or absorb the tax.

The Supreme Court has passed upon some matters which have a bearing upon the pivotal question involved here. In Hendrick v. Maryland, 35 S. Ct. 140, 235 U. S. 610, 59 L. Ed. 385, it appears from the statement of the cause that the law of the state required the operator of a motor vehicle to procure a certificate of registration and pay certain registration fees, and inhibited any driver of a motor vehicle to operate his motor upon the highway unless he obtained an operator's license, at a cost of $2. By a further provision, all moneys collected under the provisions of the act are made payable to the commissioner, and, except so much as is necessary for the salaries and expenses, are payable into the state treasury to be used in constructing, maintaining, and repairing the streets of Baltimore and roads built or aided by the county or the state itself. (The state of Oregon has adopted similar provisions. Chapter 399, General Laws of Oregon 1919.) The principal controversy involved related to whether the interstate commerce clause of the constitution had been overridden. It was held, among other things, that the state "may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles—those moving in interstate commerce as well as others—and to this end it may require the registration of such vehicles and the licensing of their drivers, charging therefor reasonable fees." And the court further said: "In view of the many decisions of this court, there can be no serious doubt that, where a state at its own expense furnishes special facilities for the use of those engaged in commerce, interstate as well as domestic, it may exact compensation therefor. The amount of the charges and the method of collection are primarily for determination by the state itself; and so long as they are reasonable and are fixed according to some uniform, fair, and practical standard they constitute no burden on interstate commerce."

Kane v. New Jersey, 37 S. Ct. 30, 242 U. S. 160, 61 L. Ed. 222, presents an analogous case, involving a similar statute, where the doctrine of the Hendrick Case was affirmed, in language following: "The power of a state to regulate the use of motor vehicles on its highways has been recently considered by this court and broadly sustained. It extends to nonresidents as well as to residents. It includes the right to exact reasonable compensation for special facilities afforded as well as reasonable provisions to ensure safety." While it may be that the license fees and other burdens imposed by these statutes, and required to be paid into the treasury of the state for use in constructing and maintaining highways, are upheld by these cases, because imposed in pursuance of the police power, yet it must be admitted that the power of regulation is broadly sustained.

The case of Pierce Oil Corp. v. Hopkins, 44 S. Ct. 251, 264 U. S. 137, 68 L. Ed. 593, presents a different aspect. Under the statute of Arkansas, one who sells gasoline to be used by the purchaser in motor vehicles on highways of the state is required to collect from the purchaser, in addition to the usual charge therefor, one cent per gallon for each gallon sold. The dealer is required to pay over to the county clerk each month the amount of the taxes accrued. Against the claim that the act violates the due process clause, based upon the argument that the tax levied is a privilege tax for the use of the highways by the purchasers, the court an-

swered that the seller is directed to collect the tax from the purchaser when he makes the sale, and that a state which has, under its constitution, the power to regulate the business of selling gasoline, and doubtless the power to tax the privilege of carrying on that business, is not prevented by the due process clause from imposing the incidental burden.

The Arkansas statute differs but slightly from the one under consideration. There the seller is directed to collect the tax from the purchaser of motor fuel. Here the seller or dealer is required to pay over to the secretary of state two cents per gallon upon sales made. The question that the tax was a toll upon the use of the rural post road, as here presented, was not there raised or determined. The case, however, has a bearing respecting the nature of the tax involved. It is not questioned that the state is empowered to subject the dealer in motor fuels to a license or excise tax upon the amount of sales made by him. Indeed, the power is sustained by Portland v. Kozer, supra.

The statute of New Mexico defines a distributor of gasoline; also a retailer thereof. It also requires of every distributor an annual license tax of $50 for each distributing station or agency, and of each retail dealer a like tax of $5 for every place of business or agency. Further, it imposes an excise tax upon the sale or use of gasoline sold or used in the state, at the rate of 2 cents per gallon on all gasoline sold or used. The effect of the statute came before the Supreme Court in two appeals of the same case. In the first, Askren v. Continental Oil Co., 40 S. Ct. 355, 252 U. S. 444, 64 L. Ed. 654, it was held that the statute was inimical to the commerce clause of the Constitution, in so far as it related to the business of selling in tank car lots and in barrels and packages, as originally imported into the state, but that, if separable, it was valid in its application to sales made from such original packages in retail quantities to suit purchasers. The question whether the act was separable, in so far as determining the proportion of the tax imposed upon original packages, as imported into the state, and from such packages to purchasers, was reserved. The court did decide two propositions. One was that, considering the provisions of the act and the effect thereof, the tax imposed was upon the privilege of dealing in gasoline in the state of New Mexico; the other that, in view of the allegations of the bills that the business in part consisted of selling gasoline in retail quantities to suit purchasers, a business of that sort, although the gasoline was brought into the state in interstate commerce, was taxable by the laws of the state.

Upon the second appeal, under the title of Bowman v. Continental Oil Co., 41 S. Ct. 606, 256 U. S. 642, 65 L. Ed. 1139, the court declared that no doubt the state might impose a license tax upon the distribution and sale of gasoline in domestic commerce, if it did not make its payment a condition of carrying on interstate or foreign commerce. The decree of the lower court was reversed, and the cause was remanded, with directions to grant a decree enjoining the enforcement as against plaintiff of the license tax without qualification, and of the excise tax upon the sale or use of gasoline with respect to sales of gasoline brought from without the state into New Mexico, and there sold in original packages and in the same form and condition as received by plaintiff in that state, but without prejudice to the right of the state to enforce collection of the excise tax with respect to sales of gasoline from broken packages in quantities to suit purchasers.

It should be further noticed that, in the statute there under consideration, the state treasurer was, as here, required to set aside from the license fees and taxes collected a sufficient sum to pay the salaries and traveling expenses of the inspectors out of the money received from collections, and to place the balance to the credit of the state road fund to be used for construction, improvement, and maintenance of public highways. [1] These cases are useful and authoritative in determining the character of tax imposed, as here designed. It is a license or excise tax, imposed upon the dealer, to be paid upon the amount of fuel oil disposed of to users of motor vehicles operated upon the highways and rural post roads of the state. The question whether that character of tax is in legal effect a toll upon rural post roads is still undisposed of, in so far as any decision or authority brought to my attention discloses.

That the license or excise tax is to be covered into the state treasury, to be used for the construction, maintenance and upkeep of the rural post highways, or to meet the payment of interest on highway bonds, or to be used for reducing or discharging the funded indebtedness respecting highways, lends no support to the argument that it is a toll upon the use of the highways by automobile traffic. The state could as well have directed that the money arising from such tax should be turned into the treasury generally, and used for general purposes. If such had been the case, there could not be the remotest inference that the tax was a toll imposed upon the

privilege of using the highway for automobile traffic.

Nor is it demonstrable that the tax that the dealer is required to pay is an added expense to the purchaser, for his motor fuel, in the exact amount of the tax. It may or may not be, with the probability in favor of the negative. No one can say that the levy of the dealer's excise tax lifts the market price of motor fuel by just that amount, or in any amount, if it comes to that. It may be that the market price of the fuel is controlled by the importers into the state. But that, again, is controlled by competition among oil producers and refiners, and by supply and demand. Of course, local conditions enter more or less into the fixing of market value, one of which may be the imposition of a local excise tax, and it may be that importers, in responding to market prices, really absorb a proportion of the tax; that is to say, the market price to the dealers may be less by reason of the tax than it would otherwise be. So that it cannot be said with confidence that motor oil costs the users more by exactly the amount of the tax than it would cost them if the tax were not imposed, nor that the user pays more by the amount of the excise paid by the dealer for his motor fuel. The amount of the tax is therefore an unreliable standard as a toll against the driver of an automobile for the privilege of operating his car upon the highways.

[2] Further than this, the tax lacks the characteristics of a toll. In its general acceptation, toll is "a settled, certain, and defined sum exacted for the use of a common passage; a tribute or custom paid for passage, or a duty imposed on goods and passengers traveling public roads, bridges, etc.; a tribute for passage; * * * a tax paid for some use or privilege or other reasonable consideration; the consideration for the use of a road or bridge, not compensation for carriage over it; a tribute or custom paid for passage; something taken for a liberty or privilege." 38 Cyc. 359.

No doubt the Congress had in mind, in adopting the clause, "All highways constructed or reconstructed under the provisions of this act shall be free from tolls of all kinds," the many toll roads of the country that were in years previous constructed through grants of public lands and bounties appropriated by the general government, and on which, for the privilege of passage, the proprietors were permitted to exact tolls, and it was adopted as a policy that no tolls of any kind should be exacted for the privilege of passage over the rural post roads for the construction of which the government was to appropriate its public funds. Such is obviously the intendment of the acts of Congress in extending aid to the states for construction and maintenance of their roads and highways. The excise tax here provided for has no relation to the tolls inhibited by the acts of Congress, and is therefore not to be condemned as such.

The motion to dismiss will be sustained.