**MARTINE et al. v. KOZER, Secretary of State of Oregon.**

(District Court, D. Oregon. March 15, 1926.)

No. 8801.

1. Automobiles ⬩73—Oregon motor vehicle license law held valid exercise of police power (Laws Or. 1921, p. 707).

Laws Or. 707, governing use of roads and highways, and requiring annual license fee on motor vehicles, *held* not on its face an arbitrary or despotic exercise of police power, and, being police regulation, must be deemed regular and valid, until contrary is clearly shown.

2. Automobiles ⬩73—Oregon motor vehicle license law held not invalid as imposing "toll," within federal Rural Post Roads Act, requiring highways to be free from tolls (Laws Or. 1921, p. 707; Rural Post Roads Act Cong. July 11, 1916 [Comp. St. §§ 7477a–7477i], amended by Act Feb. 28, 1919 [Comp. St. Ann. Supp. 1919, § 7477bb et seq.]; Highway Act U. S. Nov. 9, 1921 [Comp. St. Ann. Supp. 1923, §§ 7477¼–7477¼y]).

License fee on motor vehicles, imposed by Laws Or. 1921, p. 707, *held* not void as a "toll," within intendment of Rural Post Roads Act Cong. July 11, 1916 (Comp. St. §§ 7477a–7477i), amended by Act Feb. 28, 1919 (Comp. St. Ann. Supp. 1919, § 7477bb et seq.), and Highway Act U. S. Nov. 9, 1921 (Comp. St. Ann. Supp. 1923, §§ 7477¼–7477¼y), prohibiting tolls on highways constructed under its provisions.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Toll.]

At Law. Suit by I. S. Martine and others against Sam A. Kozer, Secretary of State of Oregon. On motion to dismiss complaint. Motion sustained.

W. R. Crawford, of Seattle, Wash., for plaintiffs.

I. H. Van Winkle, Atty. Gen., of Oregon, and Willis S. Moore and J. M. Devers, Asst. Attys. Gen., for defendant.

WOLVERTON, District Judge. This is a suit instituted by a large number of persons, owners of motor vehicles, in behalf of themselves and all others similarly situated,

against the Secretary of State of the state of Oregon, to enjoin him from exacting the annual registration or license fees for motor vehicles, imposed by chapter 371 of the 1921 General Laws of the State, as being in contravention of the Rural Post Roads Act of Congress of July 11, 1916 (chapter 241, 39 Stat. 355 [Comp. St. §§ 7477a–7477i]), as amended February 28, 1919 (chapter 69, 40 Stat. 1189, 1200 [Comp. St. Ann. Supp. 1919, § 7477bb et seq.]), and the Federal Highway Act of November 9, 1921 (chapter 119, 42 Stat. 212 [Comp. St. Ann. Supp. 1923, §§ 7477¼–7477¼y]), whereby it is declared that all highways constructed under the provisions thereof "shall be free from tolls of all kinds." The bill of complaint is challenged by motion to dismiss.

The state act is general in its purpose and application, designed for governing the use of roads and highways within the state by motor vehicles of all kinds, and including, among other subjects, rules of the road, equipment, brakes, etc., registration of motor vehicles, etc. Registration is required to be made annually with the secretary of state. By section 25 of the act, annual license fees, which are graduated from $3 up to $97 per vehicle, according to style and weight of the car, are required to be paid by the owner. The license fees on motor trucks, trailers, and semitrailers are graduated upon a different basis, and in some instances are higher than on machines classed as motor vehicles.

By its section 26 the act exempts such motor vehicles and trucks from the payment of all other taxes and licenses, except municipal license fees. Section 44 provides in effect that all moneys received by the secretary of state from this source shall be deposited with the state treasurer. After the payment of the expenses of administering the act, three-fourths of the fund thus accumulated must be transferred to the state highway fund for such purposes as are provided by law, and the remaining one-fourth is required to be remitted by warrant of the secretary of state to the county treasurers of the counties, to be deposited (section 45) to the credit of the "motor license fund" which is required to be created in each county. By section 46 the funds thus accumulated may be used for the payment of interest and retirement of bonds issued for the construction and improvement of roads, or to defray the expenses of preparing the roadbed, bridges, etc., for construction of state highways, or, under certain conditions, in the discretion of the county court, in any other manner for general road purposes.

By section 8, chapter 383, General Laws of Oregon of 1921, the state highway commission is authorized to pay the principal and interest upon highway bonds, as the same shall become due, from any funds subject to its control, from whatever source the same may come, without regard to the origin of said funds. The single ground upon which plaintiffs predicate their right for relief is that the registration or license fees exacted on motor vehicles are, in legal contemplation, a toll for the right to travel upon and to use the highways of the state, constructed or reconstructed in part under and in pursuance of the acts of Congress above cited, and by the aid of appropriations from the general government, and therefore that such exactions are void and unenforceable.

We had occasion in an analogous case, Anthony et al. v. Kozer, Secretary of State (D. C.) 11 F.(2d) 641, to examine into the characteristics of a toll, as within the intendment of the acts of Congress relating to rural post roads and federal highways, and held that an excise tax exacted from dealers engaged in vending gasoline to be used for propelling motor vehicles upon the highways of the state was not a toll inimical to the denunciation of Congress. The registration or license fees here involved do not purport to be a charge for traveling upon the public highways of the state, or for the right to use such highways for traffic thereon. If such fees can be regarded as tolls, it must be because of their indirect effect as relating to travel upon and the use of such roads by the general public. That they do not affect the whole public is demonstrable by the suggestion that persons operating motor vehicles through the state are not required to pay the registration or license fees, so that as it respects nonresidents the highways are absolutely free from tolls of any kind. Such nonresidents, however, are subject to the regulatory features of the law, as it relates to traffic on the highways, the same as residents operating motor vehicles thereon.

It cannot be doubted that chapter 371 of the General Laws of Oregon of 1921 is an act adopted in pursuance of the police powers of the state, and that the requirement relating to the registration of motor vehicles, with an exaction of registration or license fees is an element or subject pertaining to the police powers. Now we have recent authority from the Supreme Court that such regulation, in so far as it might impinge upon the interstate commerce clause of the Constitution, if it is reasonable and not arbitrary or despotic, is entirely within the authority

of the Legislature acting within the police powers of the state to enact. I refer to the cases of Hendrick v. Maryland, 35 S. Ct. 140, 235 U. S. 610, 59 L. Ed. 385, and Kane v. New Jersey, 37 S. Ct. 30, 242 U. S. 160, 61 L. Ed. 222.

The Hendrick Case covers so fully the conditions that prevail here and elsewhere, respecting highways and the nature of motor vehicle traffic, that I may be pardoned in quoting at length from the opinion, respecting the general facts as well as the law applicable:

"The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves. Their success depends on good roads the construction and maintenance of which are exceedingly expensive; and in recent years insistent demands have been made upon the states for better facilities, especially by the ever-increasing number of those who own such vehicles. As is well known, in order to meet this demand and accommodate the growing traffic, the state of Maryland has built and is maintaining a system of improved roadways. Primarily for the enforcement of good order and the protection of those within its own jurisdiction, the state put into effect the above-described general regulations, including requirements for registration and licenses. A further evident purpose was to secure some compensation for the use of facilities provided at great cost from the class for whose needs they are essential and whose operations over them are peculiarly injurious.

"In the absence of national legislation covering the subject a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles—those moving in interstate commerce as well as others. And to this end it may require the registration of such vehicles and the licensing of their drivers, charging therefor reasonable fees graduated according to the horse power of the engines—a practical measure of size, speed, and difficulty of control. This is but an exercise of the police power uniformly recognized as belonging to the states and essential to the preservation of the health, safety, and comfort of their citizens, and it does not constitute a direct and material burden on interstate commerce. The reasonableness of the state's action is always subject to inquiry in so far as it affects interstate commerce, and in that regard it is likewise subordinate to the will of Congress. * * *

"In view of the many decisions of this court there can be no serious doubt that, where a state at its own expense furnishes special facilities for the use of those engaged in commerce, interstate as well as domestic, it may exact compensation therefor. The amount of the charges and the method of collection are primarily for determination by the state itself, and so long as they are reasonable and are fixed according to some uniform, fair, and practical standard they constitute no burden on interstate commerce."

The Kane Case, as it respects the power of state regulation, reaffirms the doctrine of the Hendrick Case. The court there says:

"The power of a state to regulate the use of motor vehicles on its highways has been recently considered by this court and broadly sustained. It extends to nonresidents as well as to residents. It includes the right to exact reasonable compensation for special facilities afforded as well as reasonable provisions to insure safety, and it is properly exercised in imposing a license fee graduated according to the horse power of the engine."

It is a dogma of legislation that the action of the state must be treated as correct unless the contrary is made to appear (Hendrick Case, page 624 [35 S. Ct. 143]), and it was further said:

"In the instant case there is no evidence concerning the value of the facilities supplied by the state, the cost of maintaining them, or the fairness of the methods adopted for collecting the charges imposed, and we cannot say, from a mere inspection of the statute, that its provisions are arbitrary or unreasonable."

The registration or license fees are denominated by the Supreme Court of Oregon a privilege tax. Briedwell v. Henderson, 195 P. 575, 99 Or. 506; Northwest Auto Co. v. Hurlburt, 207 P. 161, 104 Or. 398; Camas Stage Co., Inc., v. Kozer, 209 P. 95, 104 Or. 600, 25 A. L. R. 27. And Mr. Justice McBride, very cogently and lucidly, gives reasons for so calling it:

"That purpose, in a nutshell, was to require the owners of motor vehicles to make good to the state the extra damage and wear and tear caused by the use of the vehicles upon its highways. The use of motor vehicles upon the roads was comparatively an innovation, having grown to its then proportions in the space of a few years. For such use better and more permanent roads and roadbeds were required than for the comparatively light vehicles theretofore employed.

Their weight and swiftness were calculated to work serious injury to the roadbeds prepared for lighter and slower vehicles, and necessitated highways more permanently constructed and more frequent repairs to those already in use." 104 Or. 407 (207 P. 164).

And he further declares:

"As a police measure, it was nothing more than fair that the agencies causing and requiring this extra expense should be required to pay for it."

And in the Henderson Case, supra (page 518 [195 P. 579]), the court further declares:

"We cannot say that the license fee exacted for the privilege of operating motor vehicles upon the highways of this state is unreasonable."

[1] If such a tax or license fee is not inimical to the interstate commerce clause of the Constitution, it is not at all clear or obvious that it contravenes the clause respecting tolls of any kind as found in the Rural Post Roads and Federal Highway Acts. Indeed, it would seem that, on the contrary, it does not. The state act, being a police regulation, must be deemed to be regular and valid, unless it appears on its face to be an unreasonable and arbitrary exercise of the police power, or is made so to appear by clear and cogent showing aliunde. Such a showing has not been attempted. I am in accord with the Supreme Court of the state that the state regulation, upon its face, is not an arbitrary nor despotic exercise of the police power.

Further than this, as we said in the Anthony Case, the tax lacks the characteristics of a toll. "In its general acceptation, toll is 'a settled, certain and defined sum exacted for the use of a common passage; a tribute or custom paid for passage, or a duty imposed on goods and passengers traveling public roads, bridges, etc.; a tribute for passage; * * * a tax paid for some use or privilege or other reasonable consideration; the consideration for the use of a road or bridge, not compensation for carriage over it; a tribute or custom paid for passage; something taken for a liberty or privilege.' 38 Cyc. 359."

And we further said:

"No doubt the Congress had in mind, in adopting the clause, 'All highways constructed or reconstructed under the provisions of this act shall be free from tolls of all kinds,' the many toll roads of the country that were in years previous constructed through grants of public lands and bounties appropriated by the general government, and on which, for the privilege of passage, the proprietors were permitted to exact tolls, and it was adopted as a policy that no tolls of any kind should be exacted for the privilege of passage over the rural post roads for the construction of which the government was to appropriate its public funds. Such is obviously the intendment of the acts of Congress in extending aid to the states for construction and maintenance of their roads and highways. The excise tax here provided for has no relation to the tolls inhibited by the acts of Congress, and is therefore not to be condemned as such."

So we say here the registration or license fees here exacted have no relation to the tolls inhibited by the acts of Congress, and are not to be condemned as such.

[2] I am persuaded, therefore, that the registration or license fees, or privilege tax, as designated by the state Supreme Court, here imposed are not a toll of any kind within the intendment of the acts of Congress cited, and therefore that the state legislation is not void, as contended by complainants.

Motion to dismiss sustained.