The Honorable Bob Watts State Representative Route 1, Box 125 Harrison, AR 72601
Dear Representative Watts:
This is in response to your request for an opinion on several questions concerning the licensure and registration of motor vehicles and the operators thereof. You have asked four questions, which will be answered below in the order in which they were posed.
QUESTION 1: "Can an automobile be protected from possible theft or fraud in the State of Arkansas (which is not connected to commercial endeavors or interstate business ventures) through registration or certification with this State, whereby the lawful owner is not forced into commercial or business contractual agreements which would make some or private property subject to Legislative venue and tribunals/corporation courts. And if yes, how does one register or certify an automobile for this protection?"
Initially, it should be noted that one of the purposes of licensure and registration of vehicles under current Arkansas statutes is to impede the sale of stolen vehicles, and protect the owners of motor vehicles from theft and fraud. U.S. Fidelity 
Guaranty Co. v. Trussell, 208 F. Supp. 154 (W.D.Va. 1962); Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nevada, 94 Nev. 131,575 P.2d 938 (1978). We are aware of no "contractual agreement" which a vehicle owner is "forced" into as a result of this registration. These requirements are mandated by law, and penalties are provided for failure to comply. See, generally, A.C.A. 27-14-301, et seq.
Additionally, the question of whether "some or private property" is subject to the venue and jurisdiction of Arkansas courts is a question independent of the licensure and registration requirements that must be determined in light of relevant statutory and constitutional analysis and the facts of each particular case.
QUESTION 2. "Are the usual Licensing and Registration procedures for automobiles now used in Arkansas of a commercial and/or business nature carrying with their acceptance and use implied consent and/or agreement to regulation under commercial, occupational and business statutory/Code authority?"
Although we are unsure exactly as to the object of your inquiry, we interpret your question as being: To what extent does licensure and registration of commercial vehicles with the State of Arkansas subject the vehicles and their owners to the laws and regulations of the State? The answer to this question is not easily penned. In some instances, the registration of a vehicle does subject it to certain State Regulation; (See for example, A.C.A. 27-35-107, which gives the Commission of Motor Vehicles the right to investigate and regulate the weight of certain commercial vehicles upon their registration). In other instances, vehicles may be subject to state control and regulation even though they are not registered in this state. Authority to enforce local speed limits is a prime example. (See A.C.A. 27-51-201). In still other instances, as in litigation, the question of whether a particular state law or regulation applies to an Arkansas registered vehicle will be decided by a court faced with a "conflicts of laws" choice. More specific analysis would require guidance as to the particular "commercial occupational, and business statutory/code authority" to which you refer.
QUESTION 3. "Are the Operator's and chauffeur's Licenses (27-16-602) issued by the State of Arkansas of a commercial, business, or occupational nature?"
The answer to question three is no. Although A.C.A. 27-16-602
provides that "(n)o person . . . shall drive any motor vehicle upon a highway in this state unless the person has a valid license . . .", and although "person" is defined in 27-16-204 as "every natural person, firm, co-partnership, association, or corporation," it is clear that no entity other than a "natural person" can "drive any motor vehicle upon a highway." Additionally, 27-16-704 defines "operator" as someone who "drives or is in actual physical control of a motor vehicle." Because it is apparent that 27-16-602 could not have intended to require operator's licenses of corporations, etc., it must be concluded that such licenses are personal in nature. See also Emerson Troy Granite Co. v. Pearson, 74 N.H. 22,64 A. 582 (1906).
QUESTION 4. "Are natural persons/sovereign individuals required to enter into contractual agreement with the State of Arkansas where said agreement carry implied/tacit/quasi commercial/corporate/franchised implications, where said natural person only wishes to exercise the right and liberties of travel?"
We are aware of no "contractual agreement" that "natural persons" are required to enter into with the state. Consequently, we are uncertain of just what "implied/tacit/quasi commercial/corporate/franchised implications" such an agreement might carry. If your inquiry seeks an opinion upon the statutory or constitutional authority of the state to impose licensure and registration requirements, it is my opinion that such requirements are legally and constitutionally within the police power of the state. Satterlee v. State, 289 Ark. 450, 711 S.W.2d 827 (1986); Morf v. Bingaman, 298 U.S. 407 (1936); Martine v. Kozer, 11 F.2d 645
(D.Ore. 1926).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.